CALVIN G. WILLIAMS, Appellant,

*vs.*

GEORGE H. SLAUGHTER, MILDRED A. SLAUGH-
TER, and GABRIEL T. LONG.

APPEAL FROM THF CIROUIT COURT OF DANE COUNTY.

On the sale of chattels, in the absence of an express warranty of quality or con-
dition, no implied warranty can be raised. This general rule of law is however
inapplicable to the case of articles manufactured or intended for particular pur-
poses, or to the sale of articles to be used for food, or to the sale of goods by
sample.

The appellant in this case filed his bill in the Cir-
cuit Court of the county of Dane, on the chancery
side thereof, on the 6th day of June, A. D. 1851, for
the foreclosure of a mortgage, executed by the said
defendants to the said complainant on the 16th day
of September, A. D. 1848, to secure the performance
on the part of the said defendant, Geo. H. Slaughter,
of the conditions of a bond, of which the following is
a copy:

Know all men, by these presents:

That I, George H. Slaughter, of the town of Spring-
field, county of Dane, and State of Wisconsin, am
held and firmly bound to Calvin G. Williams, in the
penal sum of fourteen hundred and twenty dollars for
sheep, and four hundred and seventy-five dollars for
wool, annually, to the payment of which sum, well
and truly to be made, I bind myself, my heirs, execu-
tors, and administrators, firmly by these presents, sign-
ed with my hand, and sealed with my seal, this six-

June Term
1854.

Williams
vs.
Slaughter
et al.

teenth day of September, in the year of our Lord, one thousand eight hundred and forty-eight.

The condition of the above obligation is such, that whereas the said Calvin G. Williams has delivered to the said George H. Slaughter nine hundred and forty-four sheep, and five good bucks, and the said George H. Slaughter has agreed in consideration thereof to take said sheep and keep the same, and to deliver to the said Williams annually, on the fifteenth day of June in each and every year, for five years from the date hereof, fourteen hundred and sixteen pounds of good, clean, washed wool, and the fleece of five good bucks, of an average quality of that produced by said sheep above mentioned; said wool to be delivered in such place in the city of Milwaukee, and State of Wisconsin, as the said Williams shall designate and appoint; and has also agreed to deliver to said Williams, at the expiration of said five years, nine hundred and forty-four good merchantable sheep, and five good bucks, of an average quality of the sheep above mentioned.

Now, if the said George H. Slaughter shall deliver to the said Calvin G. Williams at such place in the city of Milwaukee as he shall designate, and appoint, annually, on the fifteenth day of June in each and every year, for five years from the date hereof, fourteen hundred and sixteen pounds of good clean washed wool, and the fleece of five good bucks of an average quality of that produced by said sheep above mentioned, and shall also at the expiration of said five years, deliver to the said Calvin G. Williams, nine hundred and forty-four good merchantable sheep and five good bucks of an average quality of the sheep

above mentioned, then this obligation to be void, oth- <span style="float:right"><small>JUNE TERM<br>1854.</small></span>
erwise of force.

<div style="float:right"><small>Williams<br>vs.<br>Slaughter<br>et al</small></div>

[Signed]      G. H. SLAUGHTER.      [L. S.]

On the back of which said bond is the following endorsement:

"It is hereby made a part and provision of the within instrument, that the said George H. Slaughter, if he elects so to do, by giving the said Calvin G. Williams one year's previous notice, may return said sheep at the expiration of three years from the date of this bond.

[Signed]            "CALVIN G. WILLIAMS."

The bill of complaint alleged in substance that on or about the 16th day of September, 1848, the said defendant, George H. Slaughter, in pursuance of an agreement theretofore made, took of the said complainant nine hundred and forty-four sheep, and five bucks, on the terms and conditions set forth in the above bond; and that the said defendants, to secure the conditions of said bond, did, on the date aforesaid, execute the mortgage aforesaid; that neither George H. Slaughter, nor any person for him, had ever paid or delivered any portion of the wool mentioned in the condition of said bond; and set forth the amount then claimed to be due thereon; that said defendants had enjoyed the mortgaged premises; that no suit at law had been had ; with usual prayer for answers, relief, &c.

On the 19th day of November, A. D. 1851, the said defendant, George H. Slaughter, filed his separate answer to the complainant's bill, in which said defendant admits that he did receive from said complainant, on or about said 16th day of September, 1848, nine hundred and forty-four sheep, and five bucks, as

June Term
1854.

Williams
vs.
Slaughter
et al.
set forth in said bill; that he also executed and delivered to said complainant the bond in said bill described; that he did also, in connection with the other two defendants, execute and deliver to said complainant the mortgage in said bill described; that neither the said George H. Slaughter, nor any person for him, had ever delivered the whole or any portion of the wool mentioned in the condition of said bond.

But said defendant, in his said answer, denied that he owed to said complainant the wool claimed in said bill to be due, and which he had failed to deliver to said complainant, or its equivalent in money; for the reason, as he alleged in said answer, that said bond and mortgage were obtained from him at the repeated solicitations of the said complainant. That said complainant came unsolicited to the house of said defendant, and proposed to let him, on the terms set forth in the conditions of said bond, from one thousand to three thousand sheep; that said defendant replied that his limited means and the hazard of sheep raising would not justify his acceptance of the complainant's proposition; that after further conversation, set forth in said answer, said defendant and complainant separated for the night; that on the following morning the complainant renewed the conversation, and made a further proposition to let him have one thousand sheep upon the terms aforesaid, and three hundred and fifty dollars in money for the period of three years, with annual interest, to enable said defendant to make suitable preparations for the care and improvement of said sheep; which proposition said defendant accepted; that this was in the fall of A. D. 1847.

Said answer further alleges that in the month of March, A. D. 1848, or thereabouts, said defendant

wrote to said complainant that the ewes must be de-
livered to him, at his residence in the county of Dane,
free from pregnancy or without lamb; that if they
were with lamb, they would not be received, or some-
thing to that effect. That in the month of Septem-
ber, A. D. 1848, when said sheep arrived at the house
of said defendant, he asked said complainant, in the
presence of witnesses, if he had received his letter, to
which the complainant answered that he had, and that
the ewes had not gone to the bucks—that they had
been kept separate from the bucks during the journey,
except when crossing one prairie, where be shingled
the bucks, and that the ewes were without lamb.

And said defendant further alleged in his said an-
swer, that the bucks and ewes were kept separate from
the time of delivery to him until about the 20th of
November, 1848, at which time, he alleges, to his great
surprise, the ewes began to have lambs, and continued
to bring forth until about the first of February, 1849,
by reason of which unseasonable yeaning, there was
a great mortality among said ewes and lambs, so that
only about two hundred and forty survived, and they
were so much damaged that said defendant sold them
for the inconsiderable sum of about forty cents per
head.

Said defendant further alleges that he expended
said sum of $350.00, and much more, in the care of
said sheep, and bestowed upon them great attention,
&c.

Said defendant further alleged, in said answer, that
he never saw said sheep until they arrived at his
house in the month of September aforesaid ; that he
had no opportunity of inspecting or examining them ;
that in contracting for and receiving said sheep, he

JUNE TERM
1854.

Williams
vs.
Slaughter
et al.
did not act upon his own judgment, but relied solely upon the representations of said complainant; and that he would not knowingly have received the sheep in the condition in which they were, on any terms.

Said defendant further charges fraud upon the part of said complainant, in the sale or letting of said sheep, and in obtaining from him said bond and mortgage; that he falsely and fraudulently represented to said defendant that none of said ewes were with young, and that no bucks had been suffered to run with them, and that said sheep were sound and merchantable, and that by such like fraudulent represenations, said defendant was induced to take said sheep, when, he alleges, that said complainant well knew that the bucks had been with the ewes, that the ewes were with lamb, and that, being so with lamb, they were liable to perish by unseasonable yeaning, &c.

Said defendant further alleges, that he obtained no wool from said sheep while they were in his possession, and that he could not consequently comply with his contract, as set forth in the complainant's bill.

Said answer further insisted that for the reasons aforesaid, said bond and mortgage should be decreed to be null and void, and closes in the usual form.

On the 19th day of November, A. D. 1851, Mildred Ann Slaughter, one of the said defendants, also filed her separate answer, in which, after the usual commencement, she answers that it is true that she, together with Gabriel T. Long, and George H. Slaughter, did execute and deliver unto the said complainant, the mortgage in his said bill described, for the purpose of securing the payment of the bond set forth in said bill of complaint, and prays hence to be dismissed with her reasonable costs, &c.

To which answers replication was filed in due form, by said complainant, and for the want of the answer of said defendant, Gabriel T. Long, on rule entered therefor, said bill was taken *pro confesso*, as to him.

The proofs in this case showed that about the middle of August, 1848, the complainant delivered to the defendant Slaughter, the sheep mentioned in the bill, at his house in Dane county; that the sheep had been driven from Ohio, and were separated from a flock of about four thousand. It appeared that the sheep were delivered in pursuance of an agreement which had theretofore been made between the parties, by which the complainant was to let to the defendant, one thousand sheep for the term of five years, for which the defendant was to pay the rent or increase as stipulated in the bond. The defendant was present at the delivery, and aided in separating and counting the sheep. At the time of such delivery some conversation took place between the complainant and defendant in regard to the quality and condition of the sheep. The defendant inquired of the complainant in what manner the sheep had been driven, and whether the bucks had been driven with the ewes. The complainant replied that the bucks had been separated from the ewes the whole way, except across Rock Prairie, where the bucks were aproned or shingled. Defendant said he did not want them if they were with lamb; to which the complainant replied, stating the manner in which they had been driven as before. The sheep were properly fed, sheltered and cared for, while in the possession of Slaughter. Some of the bucks were aproned or shingled at the time of the separation. The defendant kept the bucks separate and apart from

June Term
1854.

Williams
vs.
Slaughter
et al.

the ewes until the 20th November. A few weeks afterwards the ewes commenced lambing, and up to the 26th of February, 1849, something over four hundred died; on that day the remainder were sold at auction. The lambs had all died. Some three hundred of the sheep were sold at from eighteen to seventy-five cents each, and one hundred and eighty were disposed of for a bushel of oats each, for such as should live through the winter. It appeared that the cause of the death of the sheep in the main, was owing to their being early with young and yeaning in the cold season of the winter, together with their long drive in that condition.

It further appeared in evidence, that the number of sheep delivered was about one thousand and sixty-five; that some of the small lambs became thin, and some of the sheep lame from driving; that Mr. Slaughter objected to these, and wished to have other good ones in their stead: but the complainant proposed to give him a greater number, so as to saisfy him that the lot was fully equal to their agreement, and did put in sixty more, making one thousand and sixty sheep, with which the defendant expressed himself satisfied. Some two weeks after the delivery aforesaid, the complainant again called on the defendant who then executed and delivered the bond and mortgage set forth in the bill of complaint.

It further appeared in evidence that the sheep were carefully driven from Ohio, where they were purchased, to Wisconsin, and well kept and fed; that the bucks were either aproned or shingled, and were kept separate from the ewes during the whole drive.

On the 8th day of January, 1854, the Circuit Court made the following decree:

"This cause came on this day to be heard upon the

bill taken as confessed as to the defendant Long; and upon the answer of the defendants George H. Slaughter and Mildred Ann Slaughter, and replication thereto, and upon proofs taken by the parties, and the arguments of counsel having been heard, and it appearing to the court that the complainant did deliver to the defendant, George H. Slaughter, at the time mentioned in said bill, the number of sheep therein stated : and that thereupon, and in pursuance of a contract and agreement made by and between said complainant and the said George H. Slaughter, the bond and mortgage set forth in said bill were duly executed and delivered to the complainant for the purpose of securing the performance of said contract, according to the terms and conditions of said instruments. And it also appearing to the Court that there was no fraud practiced by said complainant and that the sheep were delivered by the complainant, and were received and accepted by the said Slaughter upon the understanding that they should be reasonably sound and fit for the uses and purposes contemplated in said contract, and that there was an implied warranty on the part of the said complainant to that effect. And it also appearing that the said defendant, Slaughter, has wholly neglected and refused to deliver to the complainant any of the wool or to return and deliver any of the sheep, according to the terms and conditions of said instrument.

And the court not being sufficiently informed and advised as to the fact whether such sheep were in a condition and of quality to comply with such understanding and implied warranty, and of the rights of the parties arising therefrom:

June Term
1854.

Williams
vs.
Slaughter
et al.

Therefore it is ordered that a feigned issue be, and the same is hereby awarded between the parties, to be tried at the Circuit Court in the usual manner, and that upon said issue the jury be directed to find,

*First*, Whether the sheep delivered by the complainant to the said George H. Slaughter, in the month of August, 1848, were reasonably sound and fit for the uses and purposes contemplated in the contract between the parties. If the jury find in the negative, then—

*Second*, What damage the said George H. Slaughter sustained by reason of such unsoundness and unfitness of said sheep.

*Third*, What number of pounds of wool, if any the said George H. Slaughter ought to pay and deliver to the said complainant, annually, during the term, of five years, in accordance with said contract in order to comply therewith, in view of the condition and quality of said sheep, at the time of their delivery.

*Fourth*, What was the market value of wool of the general quality and description of that mentioned in said contract, in the city of Milwaukee, on the 15th day of June in the years 1849, 1850, 1851, 1852 and 1853 respectively. And

*Fifth*, What was the value, on the 15th day of June, 1853, of ithe sheep which the said George H. Slaughter ought to have returned and delivered to said complainant in accordance with said contract, in view of the condition and quality of the sheep actually received by the said Slaughter in August, 1848.

Dated February 8, 1854.

From which order or decree, the said complainant took his appeal to this court.

*Abbott & Clark,* for the appellant.

*Collins, Smith & Keyes,* for the appellees.

June Term
1854.

Williams
vs.
Slaughter
et al.

*By the Court,* CRAWFORD, J. The pleadings and proofs in this cause present a case of unusual hardship, and we have carefully considered it with a view of discovering some means by which, consistent with the doctrine and practice of equity, we could afford relief to the defendants. By the rules which govern courts of equity, however, we are unable to find any satisfactory reason for the decretal order, made by the Circuit Court.

The bill in this cause was filed to obtain a decree of foreclosure of a mortgage given to secure the performance of the conditions of a bond. A contract for the purchase of a large number of sheep was made between the complainant and the defendant, George H. Slaughter, and after the delivery of the sheep to Slaughter, he executed a bond conditioned to deliver to the complainant at Milwaukee, at certain specified times, certain quantities of wool, and also to deliver, at the expiration of five years from and after the date of the bond, to the complainant, the same number of good merchantable sheep, as had been delivered to Slaughter.

The defence set up is, that in this transaction Slaughter was unable to judge of the quality or condition of the sheep, and of this he informed the complainant--that at the time of the delivery of the sheep by the complainant, the defendant informed him that if the ewes were "with lamb" he did not want them, and that relying solely on the representations that the ewes were sound and not in the condition stated, he received the sheep, but that afterwards he discovered

June Term
1854.

Williams
vs.
Slaughter
et al.

that these representations were false, and that nearly all of the ewes died during the succeeding winter in consequence of yeaning or bringing forth their young at an inclement season of the year.

The proofs taken show an instance of very great indiscretion on the part of the defendant in purchasing a species of property in a knowledge of the quality and condition of which he was quite unskilled, relying entirely on the honor and good faith of his vendor, but without requiring and receiving a specific warranty as to the quality and condition of the property. The testimony of Winston and Paddleford, two of the witnesses for the defendant, shows that at the time of the delivery of the sheep, the defendant enquired *"in what manner the sheep had been driven, and stated that if the ewes were "with lamb"* (pregnant) *he did not want them,"* to which the complainant replied that *"the bucks had been separated from the ewes on the drive, except in crossing Rock Prairie, at which time the bucks were "aproned or shingled."* There was other evidence to the effect that the sheep had been properly fed and attended to, but that the greater portion of them died during the winter in consequence of untimely yeaning, and that many of the ewes were "with lamb" at the time the defendant received them.

It is by no means clear that the complainant had any knowledge, at the time he delivered the sheep to the defendant, of the condition of the ewes, so as to charge him with fraud in suppressing the truth, nor can we glean from the testimony any evidence of a warranty. The complainant merely stated the manner in which the sheep had been driven, and there was no express warranty either required or giv-

en. Indeed the court below in its decree distinctly
declared that no fraud had been used, and in this we
are inclined to concur so far as the proofs go, and we are
not at liberty to speculate outside of the case made
by the pleadings and proofs.

We believe too, as declared in the decree of the
Circuit Court, that Col. Slaughter received the sheep
from the complainant, with the understanding on his
(Slaughter's) part that they were reasonably sound
and fit for the uses and purposes contemplated by him
in his contract; but the misfortune to him is, that he
did not exact an engagement to that effect from the
complainant. We cannot however concur with the
court below that there was an *implied warranty* by
the complainant as to the condition or fitness of the
sheep for the purposes contemplated by the defend-
ant.

The proof shows that the bond and mortgage were
executed some days after the sheep had been deliv-
ered, and it is only necessary to remark that the rule,
whether in equity or at law, is, that in the absence of
fraud all previous parol negotiations are merged in a
subsequent written contract relating to the same
subject.

The bond, therefore, is that to which we must re-
fer for the best evidence of what the contract be-
tween the parties was, and the conditions of this bond
only recite that the complainant delivered the sheep
to the defendant, George H. Slaughter, and that he
agreed to deliver to the complainant, annually, dur-
ing five years from and after the date of the bond, a
quantity of wool, and to return to the complainant,
at the expiration of said five years, the same number
of good merchantable sheep, which he had received.

JUNE TERM
1854.

Williams
vs.
Slaughter
et al.

It cannot be pretended that from the language of the condition of this bond, an express warranty of any kind appears. It shows merely, that certain property was delivered to the defendant Slaughter, and that he engaged to compensate the complainant for that property in a particular manner.

But, if we look into the original transaction, there is nothing to be found which would give rise to the implied warranty mentioned in the decree of the Circuit Court.

The current of English and American authority, on the subject of sales of chattels, ever since the case of *Chandalor vs. Lopus,* (2 Croke's, James 4,) which is the leading case, has firmly established the law to be, that on such sales, in the absence of an express warranty of quality or condition, no implied warranty can be raised. The numerous cases on this branch of the law are very ably collated in the notes to the case just cited, (*Chandelor vs. Lopus*) in *Smith's Leading Cases, with American notes,* Vol. 1, page 77.

The general rule of law above stated is, however, inapplicable to the case of manufactured articles intended for particular purposes, or to the sale of articles to be used as food, or to sales of goods by sample. These exceptions are fully illustrated in the reports, and have been pointed out and settled in our own courts, (*vide Getty et al. vs. Rountree et al.,* 2 *Chand.* 28, and *Walton et al. vs. Cody,* 1 *Wis. R.* 420.

This case does not fall within any of the exceptions to the general rule.

It presents the case of a sale of chattels in which the vendee did not exact, nor did the vendor give any warranty of the quality of the things sold—there was no fraud shown in the case, and we are unable to see

why the court below should have directed a feigned
issue to ascertain whether the sheep in question were
"reasonably sound and fit for the uses and purposes
contemplated in the contract," or to enquire of the
"damages the said George H. Slaughter sustained by
reason of such unsoundness."

The decree of the Circuit Court must be reversed,
and the cause remanded for further proceedings in ac-
cordance with this opinion.