Ruggles, C. J.
 

 This controversy arises upon a contract in relation to wheat, between a merchant and 35’1 miller; and it is one *of the many cases concerning the same subject-matter, in which it is somewhat difficult to determine, whether the parties intended to make a contract of sale or of bailment.
 

 The distinction between a bailment and a sale is correctly laid down by Bronson, chief judge, in
 
 Mallory
 
 v.
 
 Willis
 
 (4 N. Y. 85), in these words: “When the identical
 
 *435
 
 thing delivered, although in an altered form, is to be restored, the contract is one of bailment, and the title to the property is not changed; but when there is no obligation to restore the specific article, and the receiver is at liberty to return another thing of equal value, he becomes a debtor to make the return, and the title to the property is changed; it is a sale.” The judges, in that case, differed with respect to the effect of the distinction upon the case before them, but not in regard to the distinction itself.
 

 We will examine the contract in detail. In October 1844, Brown agreed to deliver to Foster, at Rochester, 30,000 bushels of wheat
 
 to be ground.
 
 These words, unless qualified and controlled by some subsequent part of the agreement, show a bailment for manufacture, and not a sale; they show what was to be done with the wheat. If the contract operated as a sale, Foster might lawfully sell it again, and immediately. But it was to be ground, and not sold; and the words used by the parties control the power of Foster over the wheat, and prevent him from selling it as his own property.
 

 The contract proceeds, “fifteen thousand bushels to be ground in season to be shipped east, during the navigation, this fall.” What was to be shipped east? The only answer to be given to this question, consistent with the language of the parties, is, that it was the flour to be made of this 15,000 bushels of wheat; and if. this part of the contract is obligatory on Foster, he was bound to return the identical flour for the purpose specified. Why was the time fixed within which it was to be manufactured? If the transaction was a sale, the time was immaterial, because Foster might have delivered other flour, without having ground the wheat, within the *time; but if it was a bailment, the time was ^
 
 7 7
 
 r * 486 material, and the parties deemed it material, or L they would not have fixed it by a stipulation in the
 
 *436
 
 contract. They contemplated a bailment, therefore, and not a sale.
 

 The contract goes on thus, “and fifteen thousand to be ground during the winter.” The same observations apply to this clause; both these provisions are obligatory upon Foster; they bind him to grind the wheat, within the specified times; and this was to be done for the benefit of Brown. But Brown could derive no benefit from the manufacture, within the time, except to enable Foster to return him the flour to be made from the wheat; and if that was what the parties meant should be done, they intended a bailment, and not a sale.
 

 The next provision in the contract is this, “said Brown to be subject to no charge on account of storage.” If the parties had intended a sale, this clause was useless ao.d senseless; because Foster could have no pretence for charging for the storage of his own wheat. But if they intended a bailment, this provision was useful, effective and sensible; it secured Brown against a charge which Foster would otherwise have had a right to make. It is a legal maxim, that every part of an instrument shall, if possible, be construed as having some effect. If we apply this maxim to the contract in question, we must regard the transaction as a bailment and not a sale.
 

 There was this further provision in the contract, “the wheat to be received from
 
 Gelston &
 
 Evans, and the flour to be
 
 returned
 
 to them.” The import of this sentence is, that the wheat received from Gelston
 
 &
 
 Evans should go back to them again in flour. The delivery to them of the flour of the same wheat would be a
 
 return
 
 of the same thing in a different form. The delivery of the flour of other wheat would not be a
 
 return
 
 to Gelston & Evans, because it had never been in any form in their hands.
 

 Every sentence in the contract has now been noticed, excepting one, and every sentence, thus noticed, contains evidence that the parties intended a bailment, and not a sale. The part not yet noticed stands in the contract immediately after the clause-in relation to storage; it is in these words :' *“ Said -Foster is to deliver to r _ I * 4 > / said Brown one barrel of superfine flour for each five bushels of wheat so delivered to be ground.” It it contended, that Foster is not bound, by-this stipulation, to return Brown, or his agents, the flour of the sam
 
 t
 
 wheat, but may perform his contract by the. delivery o"! any other superfine flour, and; therefore, the transaction was a sale, and" not a bailment.
 

 If the particular clause under consideration were t > be considered and construed by itself, and without reference to any other part of the contract, we should assen t to- the plaintiff’s proposition; - and according to the rulo by which a sale is distinguished from a bailment, we should regard it as a sale, because Foster is not, expressly and in terms, -bound in this clause to return flour of the same wheat. There are, however, even in this clause, words which make it doubtful whether the parties did not look to a return of'that flour. The purpose for which the wheat was delivered, namely, “ to be ground,” is distinctly expressed in it; and if we are to understand it was- to. be ground
 
 for Brown
 
 (and that seems to be a natural and necessary interpretation), the parties must have regarded it as Brown’s flour in Foster’s hands as bailee.
 

 But it is a settled rule in the construction of contracts, that the interpretation -must be upon the entire instrument, and not merely on disjointed or particular parts of it; the whole context is to be considered, in collecting the intention of the parties, although the immediate object of inquiry be the meaning of an isolated clause. (Chitty on Cont. 83, and authorities cited.) Here is a contract, every, sentence of which, excepting one, shows an intention to create a bailment, and -not to make a sale. Even that one, standing alone, is ambiguous; it
 
 *437
 
 shows expressly, that the wheat was delivered to be ground, and by implication, that it was to be ground for Brown. It authorizes performance, by a return of the flour made from the wheat received. It is not directly repugnant to the other parts of the contract, because it does not require performance by the delivery of flour made from other wheat. It must, therefore, be construed in subserviency to the intention to create a bail- * aqr i menh which is so *plainly manifested in all the -* other parts of the instrument, and the flour which Foster was bound to return was (although not expressly specified in the particular clause in question) the flour to be manufactured from the wheat received under the contract.
 

 The judgment of the supreme court should be reversed, and a new trial ordered.
 

 Judgment reversed, and new trial awarded.1
 

 Morse, J., dissented.
 

 The case was tried a second time before the referee, who nonsuited the plaintiff, on the ground that the sheriff was protected in taking the flour, by the exigencies of his writ; and his report was sustained at general term.
 
 20
 
 Barb. 350. In view of the previous decision of the court of appeals, it is to be presumed, the plaintiff gave other evidence of title to the property, than on the first trial, though this is not stated in the report. This view of the law is sustained by the case of Bullis
 
 v.
 
 Montgomery, 50 N. Y. 352, as the flour was taken by the sheriff out of the possession of the defendant named in the writ of replevin. But such writ is no protection, when the goods are found in the possession of a third person. Otis v. Williams, 70 N. Y. 208.