PRENTISS VS. DANAHER and another.

*Sec. 2, ch. 362, Laws of 1860, a rule for the construction of statutes—County cour of Milwaukee; its jurisdiction of garnishee suits—Pendency of prior action, how made available—Fraudulent assignment treated as a nullity—Effect of readin answer as evidence—Motion for new trial upon judge's minutes, when to be hear*

1. The provision in sec. 2, ch. 362, Laws of 1860, that the statutes that may at any time be in force relative to the circuit courts of this state, shall relate also to the county court of Milwaukee county, is a rule for the construction of statutes, and is valid.
2. Ch. 200, Laws of 1864 (entitled "An act authorizing garnishee actions in the circuit court"), does not increase the jurisdiction of the circuit courts, and its provisions are applicable to said county court.
3. Garnishee defendants cannot defend by reading at the trial the record of a prior and pending garnishee action against them for the same alleged indebtedness; but, on the commencement of the second action, must move for a stay of proceedings until the former is terminated.
4. A debtor's fraudulent assignment of his interest in a contract may be treated by the creditor as a nullity; and parties may be garnisheed for his debt, who by the terms of the assignment would be indebted to the assignee.
5. Plaintiff in garnishment may read in evidence any part of the answer, and contest the remainder, if not admitted by the pleadings.
6. A motion upon the judge's minutes for a new trial cannot be heard after the term at which the cause was tried.

APPEAL from the County Court for *Milwaukee* County.

*Danaher* and *Rooney* were garnisheed, August 3d, 1864, in a suit then pending between the plaintiff and one Power; and their answer being unsatisfactory to the plaintiff, the issue was tried before a jury.

On the 27th of April, 1864, a contract was executed by and between said Power and the Milwaukee & St. Paul Railway Co., for the delivery by the former to the latter of 7000 piles— 500 each week during May, June and July of that year, until the whole were delivered; for which he was to be paid at the rate of thirteen and a half cents per foot upon the delivery of each 500, except that ten per cent. was to be retained until the whole number was delivered and accepted. On the 5th of May of the same year, Power assigned this contract to *Danaher* and *Rooney;* and the assignment (which was in writing) contained the following provisions: 1. That the moneys which should become due on the contract should be paid to said assignees and one Furlong, who were thereby authorized to draw the money from the railway company. 2. That said assignees should furnish all the capital and do all the work necessary to the fulfillment of the contract, and receive therefor one half the net profits, the other one half to go to Furlong.—The question was, what amount, if any, was due under this assignment from said garnishees to Power, at the date of service of the garnishee process.

At the trial, the defendants objected to the introduction of any evidence, on the ground that another cause was pending in the circuit court involving the same indebtedness. Objection overruled. The plaintiff then read in evidence, against the objection of the defendants, the answer of the defendants at their examination upon garnishee process; and the contract of April 27th and assignment of May 5th, 1864, above described. They also read in evidence an answer of the M. & St. P. Railway Co., as garnishee in the same action. It stated that on said 3d of August, 1864, there was in existence a contract for piles, executed May 5th of that year, between the company and Power. A copy of this is attached to the answer, and it is substantially the same as the contract executed April 27th, except that it is for the delivery of all the piles that the railway company might require for a certain purpose specified.

The answer of said company further stated that piles had been delivered under *this* contract amounting to $12,874, the first lot being delivered June 10, the last one July 23d, 1864, and payments had been made thereon amounting to $11,586; leaving unpaid the ten per cent. which the company was to retain under said contract; and that these payments were made to *Danaher* and *Rooney*, on the order of Power. The plaintiff then offered in evidence the record of the judgment in his favor in the original suit against Power, rendered in September, 1864. Defendants objected, on the ground that the county court had no jurisdiction of this action, under ch. 200, Laws of 1864. Objection overruled.

The answer of the defendants, read in evidence for the plaintiff as above stated, was in substance as follows: that on the 9th of June, 1864, they informed Mr. Power that they had stopped delivering piles under the contract of April 27th, assigning certain reasons therefor; that Power thereupon drew an order on the railway company directing payment of all the moneys coming due under his contract, to the defendants, which is the order mentioned in the above described answer of the railway company, and bore date June 10, 1864; that under the new contract then made between them and Power, which was partly oral and partly evidenced by the order, they were to furnish all the money and draw all the pay, and were to divide the net profits with Mr. Power; that the statement in the answer of the railway company as to the amount of piles delivered and of money paid on and after June 10th, 1864, was correct; that the contract was not yet completed, as they had not yet finished the 7000 piles contracted for; that under the new contract with Power, he was to pay one half of the incidental expenses, and defendants were to have pay for their services; that the net profits realized under this contract, including what they were still to receive from the company for piles delivered, were $1154.36, one half of which ($577.18) belonged to Power; that $103.79 had been paid him, leaving due

him $473.39. The defendants then produced three accounts showing respectively, 1. The amounts of cash paid for piles delivered on said contract. 2. The amounts of cash paid for hauling the same. 3. Sundry expenses incurred in performing the contract. Among the latter were charges for the personal services of the defendants, amounting to $762.00 ; for the attendance of *Danaher* for two days as garnishee, in suits against Power, $12.00 ; for fees paid attorneys for services in such suits, $200.—One Taylor, as a witness for the plaintiff, testified: " Defendants have told me frequently that their contract with Power was at an end, that they should deliver no more piles under it, and that they had received from the railway company the ten per cent. reserved on the piles delivered, and had fully settled with the company, and received pay for all they had delivered to it."

There was considerable evidence on both sides as to the propriety of certain charges in the above described accounts ; but it need not be stated here.

F. J. Blair, as a witness for the plaintiff, was permitted, against defendant's objection, to state what *Danaher* had said to him, while engaged in getting out and delivering the piles, as to what they would cost, and what he was making or should make out of the contract. The defendants also offered in evidence (against plaintiff's objection) the record of a suit in equity in the circuit court for Milwaukee county by one Rodway, a judgment creditor of Power, against said Power, *Danaher*, *Rooney*, the M. & St. P. Railway Co., and Furlong, wherein Rodway sought the appointment of a receiver of the property, credits &c. of said Power, and that there might be applied to the payment of his judgment all, or so much as might be necessary, of the property &c. of Power in the hands of the other defendants, and especially one half of the moneys and profits arising from said contract of Power with the railroad company, so assigned to *Danaher* and *Rooney*. It appears from the record that an injunctional order was granted in that suit, on the

1st of August, 1864, restraining the other defendants from paying over to Power any moneys in 'heir hands, arising from said contract, which order was in force at the time of the service of garnishee process in this action. It also appears that shortly after the notice of garnishment was served on defendants, they and the railroad company were also served with notice of an assignment to one Kneeland of Power's interest in the contract between him and the company, and said company were further notified that all orders for payment of estimates on said contract, theretofore made, were revoked, and that all payments must be made to said Kneeland.

The court instructed the jury that the charges above specified for personal services of the defendants, for services in attending garnishee suits, and for counsel fees, could not be allowed; and it left the correctness of several other charges to be determined by the jury on the evidence, instructing them that all the others should be allowed.—Verdict for the plaintiff for $1,460.89; and judgment accordingly. The defendants moved, on the judge's minutes and the papers on file in the cause, to set aside the verdict, and for a new trial, on the ground that the verdict was against the law and the charge of the court. This motion was heard at the next subsequent term of the court, and denied; and the defendants appealed.

*Brown & Pratt*, for appellants:

Sec. 1, ch. 362, Laws of 1860, confers upon the county court of Milwaukee county "jurisdiction in all civil actions * * equal to and commensurate and concurrent with the circuit court" of said county, and authorizes it to exercise the same powers and jurisdiction in all civil actions, "as *now* exercised by the said circuit court," with a limit as to the amount. At that time the circuit court had no power to hear, try or determine an issue between a creditor and a garnishee of his debtor, except in actions where an attachment had been previously issued; and this power was derived solely from the provisions of ch. 130, R. S. By ch. 200, Laws of 1864, however, it is

provided that whenever the plaintiff " in any action in the *circuit court*, founded upon contract," shall, at the time of issuing the summons, or at any time before judgment, make affidavit that any person is indebted to defendant, &c. &c., then such person may be summoned as a garnishee of the defendant. The act further provided that all the provisions of ch. 130, R. S., relating to the subject of garnishment, so far as applicable, should apply to proceedings under that act.  Sec. 2, ch. 362, Laws of 1860, provides that "the general provisions of the statutes of Wisconsin, that may at any time be in force relative to the circuit courts of this state, shall relate also to the said county court, *unless inapplicable*, provided that the jurisdiction be limited to the amount" &c.   It is claimed that this extends the provisions of the act of 1864 to the county court, although that act is limited by its express terms to circuit courts.   We contend (1.) That said sec. 2 is *void*, because it attempts to restrict a future legislature to a particular mode of enactment in certain cases ; that is, if such legislature desired to enact any law changing, modifying or increasing the powers of the circuit courts, they would be obliged by this section to specially except said county court, otherwise their enactment would be applicable to said court.   (2.) If valid, this section has no reference to an increase of the jurisdiction of the county court in case of any increase of the jurisdiction of the circuit courts ; but only refers to subsequent modifications of the *practice* in those courts.   But the act of 1864 gives the circuit courts power to determine a class of cases of which they had previously no jurisdiction.  (3.) The law of 1860 expressly limits the jurisdiction and power of the county court to that which was *then* exercised by the circuit courts. 2. The pendency in the circuit court of another suit respecting the same indebtedness, entitled the defendants to a continuance of this action until that should be determined.   Drake on Attach., 455, and cases there cited.   3. There was a *partnership* between the defendants and Power for the purpose of getting

out the lumber.    Collyer on Part. (5th Am. ed.), § 79, and cases cited.    Until an account had been taken and a balance struck, there could be no action at law by Power against his partners for partnership profits due him.    Collyer, § 264, and cases there cited.    4. The testimony of Blair should not have been admitted.    The question was as to the propriety of each particular item of account; not as to what might have been or ought to have been made in the way of profit.    5. The right to garnishee depends upon the existence of a *legal* indebtedness.    Mere equities can be subjected to the payment of debts only by special equitable proceedings.    But the same instrument which gives any right against defendants, transfers that right to Furlong.    If Power is really the party in interest, then Furlong is trustee for Power, and the creditors of the latter must enforce their claims through the trustee.    Furlong, whether he had an actual interest or not in the transaction, could bring suit on the assignment, and the defendants are estopped by its terms from denying his right.    6. The plaintiff should not have been allowed to read in evidence the answer of the defendants on their examination as garnishees.    By the statute this was a pleading in the action.    If, however, the plaintiff was entitled to read it in evidence, by so doing he made the witness his own, and should not have been allowed to introduce evidence to impeach or contradict the answer.    7. The evidence shows that all the piles had not been delivered, and it was impossible to tell whether there would be profit or loss in carrying out the contract.

*Henry F. Prentiss*, for respondent.

DIXON, C. J.    The provision in section 2, ch. 362, Laws of 1860, that the statutes of the state that may at any time be in force relative to the circuit courts of the state, shall relate also to the county court of Milwaukee county, is a rule for the construction of statutes, and not an attempt by one legislature directly to restrict a future legislature to a particular mode of

enactment in certain cases. It is not analogous to a clause declaring that an act shall not be repealed by a general law contravening its provisions, unless such purpose be expressly set forth in such law, as was the case in *Kellogg v. Oshkosh*, 14 Wis., 623 ; but is strictly analogous to the provisions of chapter 5 of the revised statutes, entitled, " Of the construction of statutes." If the provision in question is void for the reason stated, then all or nearly all the provisions of said chapter 5 are void for the same reason. But they are not. It has always been considered competent for the legislature to enact rules for the construction of statutes, present or future, and when it has done so, each succeeding legislature, unless a contrary intention is plainly manifested, is supposed to employ words and frame enactments with reference to such rules. Again, if this clause is not to be so construed as to increase the jurisdiction of the county court by a future act of the legislature increasing the jurisdiction of the circuit courts, as contended, still the act of 1864 (chap. 200, Laws of 1864,) does not increase the jurisdiction of the circuit courts. It does not confer upon the circuit courts power to hear and determine a new class of cases, but is simply a new mode of exercising a jurisdiction which they possessed at the time the county court was organized. There is, therefore, no want of jurisdiction in the county court.

The objection that there was another suit pending against the defendants as garnishees, in which they were served before the service in this action, was not taken in time, nor in the proper form. Instead of waiting until the trial, and reading the record in the other suit in evidence on the defense, the defendants should have moved at once, upon affidavits showing the facts, for a stay of proceedings in this action until the other was terminated, which, in a proper case, would have been granted.

If a partnership existed between the defendants and Power, it was special ; and as the work was completed and the defendants had received all the money due upon the contract before

the trial, judgment was properly rendered against them for the amount then due to Power. The witness Taylor testifies that the defendants had frequently told him that their contract with Power was at an end; that they should deliver no more piles under it; that they had received from the railway company the ten per cent. reserved on the piles delivered; and that they had fully settled with the company and received pay for all the piles they had delivered to it. It is true that it does not appear that these things were done when this suit was commenced against them; but the statute authorizes the attachment in the hands of the garnishee of "debts due or to become due" against him (R. S., ch. 130, sec. 35), and it is enough that this debt is actually due when the trial is had and the judgment rendered.

The assignment of Power's interest in the contract to Kneeland was clearly fraudulent, and void as against the plaintiff, a creditor of Power. And so was the assignment of the one half interest to Furlong, and the plaintiff was not obliged to work out his rights as a creditor through Furlong as a trustee for the use of Power. He may treat the pretended transfer as conveying no interest whatever to Furlong.

The testimony of the witness Blair, though not direct, was not irrelevant. It had a remote bearing upon the questions at issue, and was therefore competent.

The answer of the defendants was part of the record, and was properly read to the jury as evidence. If an answer contain admissions of fact beneficial to the plaintiff, he may read and rely upon such admissions, and that will not preclude him from disproving the answer in other respects, the same being controverted by a reply, or by operation of statute where no reply is required.

The answer not having been made evidence by the plaintiff for all purposes or as to all its statements, the nonsuit was properly denied. In determining the motion, the court was to look to the evidence offered in behalf of the plaintiff as well as the answer.

The motion for a new trial was not heard until the next term. It was "upon the minutes" of the judge; and such a motion cannot be heard after the term at which the cause is tried. R. S., ch. 132, sec. 16; *Dunbar v. Hollinshead*, 10 Wis., 505. It appears from the record, though not from the printed case, that one ground of the motion was that the verdict was contrary to the evidence. But as the motion could not be heard at that term, it follows that no question as to the weight of evidence is before us, and that the motion was properly denied.

*By the Court.*—Judgment affirmed.