MARSH v. TITUS.

*Bailment — test of. Lien — how far valid. Conversion — what is not.*

The test of a bailment is that the identical thing is to be returned; if another thing of equal value is to be returned it is a sale.

An agreement provided that plaintiffs, who did business in Boston, Mass., should advance money to G., who did business in Penn Yan, N. Y., to enable him to carry on business in buying hides; that the advances should be charged to G.; that the hides bought should be plaintiffs, " as security for all sums as may be due them." *Held*, that plaintiffs had only a lien on the hides bought by G., and that this lien was not valid against *bona fide* purchasers without notice from G.

Under a provision in the agreement the hides bought with money advanced by plaintiffs were to be bought in their name. G. bought the hides in his own name and afterward sold them. *Held*, that there was no conversion of the hides; if any, it was of the money.

APPEAL by plaintiffs from an order at special term denying a motion by plaintiffs for a new trial after a verdict in favor of defendant.

The action was brought by Charles Marsh and another against Joshua Titus to recover the possession of a quantity of hides then in possession of defendant. The circumstances were these: In February, 1872, plaintiffs, who were partners doing business in the city of Boston under the name of Charles Marsh & Co., and one George Titus, who carried on a tannery at Penn Yan, entered into this agreement:

"The said Chas. Marsh & Co. agree with them to furnish them cash and hides to enable them to carry on the business of tanning, the same to be furnished from time to time as needed, not, however, to exceed at any one time the amount of $3,000, unless they see fit to exceed that amount; all sums so advanced, whether cash or other value, to be on interest at the rate of seven per cent per annum.

"If any hides are furnished them the title of same, and the leather manufactured, there tanned, to be bought in their name and to be theirs while tanning and after they are made into leather as security for all sums as may be due them as aforesaid; and all such leather as may be there manufactured, as fast as ready for the market, is to be sent at once to them at Boston for sale, the proceeds of which, as fast as sold, are to be placed to the credit of Geo. Titus & Co. to off-set such advances and interest, they first deducting from the amount of sales a guarantee commission of five per cent of the same. They are to keep separate and careful books of account of all receipts and expenditures in carrying on said business so as to exhibit at any and all times the true state thereof, and how all moneys advanced by said Marsh & Co. have been expended, which books shall be ever open to their inspection and that of their agents or attorneys, if any. No part of the money so advanced by them shall be diverted to any other of their business, nor for their family expenses, nor for their own time and services or private use. Said Geo. Titus & Co. have no authority to buy hides or other articles, nor borrow money on the credit of said Marsh & Co. Said Marsh & Co. are to have the right at all times to take possession of any of said property whenever they may regard it necessary for their security or protection with the right of sale as aforesaid, and if at the time of taking possession any part is in process of tanning they may finish it and out of the proceeds of sale deduct the expense therefor, in addition to all other sums due as aforesaid, accounting to said Titus & Co., or assigns, for all balances and and paying over the same."

Plaintiffs furnished money to said George Titus with which he purchased in his own name the hides in question. In September, 1872, George Titus sold out the tannery business to the defendant, his brother. Included in the property sold were the hides mentioned, which were then in the process of tanning.

The jury, under the direction of the court, found a verdict for

defendants. A motion was subsequently made by plaintiffs for a new trial, and from the order denying the same this appeal was taken.

*Ch. G. Judd,* for appellants, cited *Cary* v. *Hotailing,* 1 Hill, 311 ; *Badger* v. *Phinney,* 15 Mass. 359 ; *Hall* v. *Tuttle,* 2 Wend. 478 ; *Clark* v. *Skinner,* 20 Johns. 465 ; *Thorp* v. *Burling,* 11 id. 235 ; *Root* v. *Chandler,* 10 Wend. 110 ; *Foster* v. *Pettibone,* 7 N. Y. 433 ; *Mallory* v. *Willis,* 4 id. 85 ; *Ballard* v. *Burgett,* 40 id. 314 ; *Covill* v. *Hill,* 4 Den. 323 ; *Roth* v. *Wells,* 29 N. Y. 486 ; *Hart* v. *Ten Eyck,* 2 Johns. Ch. 62 ; *Frost* v. *Willard,* 9 Barb. 440.

*William S. Briggs,* for respondent.

Present — MULLIN, P. J., E. DARWIN SMITH and GILBERT, JJ.

GILBERT, J. The test of a bailment is that the identical thing delivered is to be returned. If the obligation of the receiver be to return another thing of equal value, it is a sale. *Foster* v. *Pettibone,* 7 N. Y. 433. Applying this rule, we think the conclusion of the court below was correct, for the reasons assigned by Mr. Justice DWIGHT.

The order must be affirmed, with costs.

[The following is the opinion at special term.]

DWIGHT, J. The undisputed evidence in the case showed that the defendant was a *bona fide* purchaser from George Titus of the property claimed by the plaintiffs. The only question was whether by such purchase he acquired title to the property as against the plaintiffs, and that depended mainly upon the construction and effect to be given to the agreement between the plaintiffs and George Titus.

I am still of the opinion which I had at the circuit, that this agreement can have no other effect than that of a chattel mortgage ; such seems to be the plain import of all its provisions.

It provides, first, for advances to be made by the plaintiffs to George Titus to enable him to carry on the business of tanning, such advances to be either of hides or of money with which to buy hides, and that such advances shall be charged to him and be on interest ; next, that the hides furnished or bought with the money furnished by the plaintiffs, shall be theirs while tanning and after

they are made into leather " *as security for all sums as may be due them as aforesaid;* " next, that the leather as fast as manufactured shall be sent to the plaintiffs to be sold for the account of George Titus, the proceeds of sale, after deducting a commission for themselves, to be credited to him in payment of the advances and interest with which he is charged ; and, lastly, that the plaintiffs shall have the right to take possession of any of such property whenever they deem it necessary for their protection and security, with the right of sale as follows, and out of the proceeds of such sale to deduct, besides certain expenses, all sums due as aforesaid, accounting to said Titus for all balances and paying over the same.

All these provisions clearly treat the advances to be made by the plaintiffs, whether of money or of hides, as creating an indebtedness from George Titus to them, and contemplate a pledge of the hides and leather as security for such indebtedness. If so, the plaintiffs had no absolute title to the property while in the possession of George Titus, but only a lien for their security, which could be enforced, as against purchasers, only against those who had notice of such lien. And the defendant having purchased without notice, either actual or constructive, acquired title to the property.

The plaintiffs, however, call attention to a provision of the agreement by which, as they say, the hides bought with money advanced by them were to be bought in their name, and insist that under this provision the hides were absolutely their property from the time of their purchase by George Titus. But the proof shows that the hides in question were not in fact bought in the name of the plaintiffs. That the conversion, if any, by George Titus was of the money and not of the hides. He used the money in every respect as his own ; deposited it in bank to his own credit and in the same account with his own moneys, and drew upon such account for all the expenses of the business which he carried on in his own name, including the purchase of hides in question.

It will not be contended that one whose money is wrongfully converted can recover property, bought with such money, from one who has purchased it in good faith from the party who was guilty of conversion.

Upon the whole it seems very clear that the plaintiffs had no title to the property in question which they could maintain against defendant. The motion for a new trial is therefore denied.

, *Order affirmed.*