## COHN VS. STEWART.

*(1, 2) Contract construed. (3) Court and jury.*

1. By the terms of a contract between the parties, S. agreed to " take charge of all logs belonging to C.," with certain marks, " as quick as they [should] arrive at the Wausau boom [on the Wisconsin river], saw the same .... from time to time, and deliver the lumber to C.," etc., and also to pay boomage charges on the logs; while C. agreed to drive the logs to the Wausau boom as soon as the water would permit. *Held*, that the contract did not bind S. to stop C.'s logs and secure their admission into the boom, or make him liable for the damages arising from the impossibility of thus securing them; but the risk of the boom company being able to receive and retain the logs at the boom remained with C.

2. It appears from the evidence that both parties were familiar with the Wisconsin river, and the running of logs and transaction of lumber business thereon; and C. knew that the Wausau boom belonged to an incorporated company, and had seen its charter, under which it was not compelled to take charge, at any one time, of logs or lumber in excess of the capacity of its boom, but could relieve itself of liability to log owners by giving them a certain notice. It also appears that C. knew all about the situation of the boom, its limited capacity to hold logs, and the fact that large quantities of logs were driven down the river to it at certain seasons. *Held*, that these facts confirm the construction here put upon the contract.

3. Where it appears conclusively as against the plaintiff, that the contract between the parties was fully expressed in a written memorandum put in evidence by him, it is not competent for the jury to find that the terms of the contract were more favorable to him than such writing (the construction of which is for the court); and the giving of an instruction which permits them so to find is error.

4. Where there is no evidence to support the verdict, it is error to deny a motion for a new trial upon that ground, based upon " the minutes of the testimony," etc.

APPEAL from the Circuit Court for *Monroe* County.

The complaint alleges that in March, 1872, plaintiff was the owner of about 2,800,000 feet of lumber in pine saw logs, lying at different points along the Wisconsin river and its tributaries, above the Wausau boom on said river; that on the 12th day of said month, the plaintiff made a contract with

defendant, by which, in consideration of certain payments therein agreed to be made, defendant agreed to take and receive all the plaintiff's logs into the Wausau boom as fast as and when said logs should arrive thereat, and to manufacture them into lumber for the Mississippi market, and deliver the lumber so made at the tail of the McIndoe mill, at a good place for rafting, as soon as it could reasonably be done after the delivery of the logs at the boom; that it was further agreed that plaintiff should drive said logs down the river to said boom, on the first sufficient water after such contract was made, and defendant was to receive and take charge of them as they arrived at the boom; that in pursuance of said contract, on or about the 30th of April, 1872, on the first water sufficient to run said logs, they were started, and driven down said river to the boom at Wausau; that defendant, in violation of his contract, neglected and refused to receive said logs in the boom at Wausau, and caused them to be turned out of the boom and down the river, except about 1,400,000 feet, which he received into the boom and manufactured into lumber according to said contract; and that, by reason of such neglect and refusal of defendant, the plaintiff suffered damage (in certain specified ways) in the sum of $8,500, with interest, for which he demands judgment.

The answer, after a general denial, avers that in March, 1872, plaintiff and one Curran were partners doing business under the name of Cohn & Curran, and as such owned and controlled the logs named in the complaint, known as the Cohn & Curran drive; that defendant agreed with plaintiff to saw such of these logs as might come into the boom at Wausau, at certain specified rates; that said logs were sawed according to the agreement, and a full settlement had thereon; and that all the logs mentioned in the complaint as having gone down the river below Wausau were so taken and driven down by order of said Cohn & Curran.

On the trial, the plaintiff testified to conversations between

himself and defendant, in which the latter proposed to take charge of, saw and deliver the logs in question in the manner stated in the complaint; that thereupon plaintiff, in defendant's office, drew up a certain paper offered in evidence, purporting to be a contract between the parties, but signed only by the plaintiff; that defendant read it and made no objection to its terms, but said that he did not wish to sign it "until Mr. McIndoe returned." [Mr. McIndoe was then the reputed owner of the "McIndoe mill," and appears to have owned four-ninths of the stock of the Wausau Boom Company, and was its president.] Plaintiff further testified, that defendant directed his book-keeper to take "the contract" and put it into the safe in the office, and promised that when Mr. McIndoe returned, he (defendant) would telegraph or write to plaintiff; that plaintiff thereupon started for home, and, four or five days afterwards, received a letter signed by defendant, which stated that McIndoe had returned, and that "the contract would be accepted and lived up to." [The letter was not produced, plaintiff testifying that he had lost it.] Plaintiff also testified that such paper writing was a correct statement of the agreement between the parties, and gave testimony tending to show that defendant had subsequently recognized it as such. The court, against defendant's objection, admitted the paper in evidence, "as a circumstance to be taken in connection with the testimony on the part of the plaintiff." The essential parts of it were as follows: "*Alexander Stewart* agrees to take charge of all the logs belonging to *L. S. Cohn*, with the following marks thereupon [here follow the marks], as quick as they arrive at the Wausau boom, saw the same for Miss. market as may be directed by *L. S. Cohn* from time to time, and deliver the lumber to the said *L. S. Cohn*, at the tail end of McIndoe's mill at good place to raft; all for the payment of two dollars and seventy-five cents per thousand feet. And the said *Alex. Stewart* furthermore agrees to put all the lumber, or a portion thereof, in a pile at a good place

to raft, as soon as ordered by the said *L. S. Cohn*, for the payment of twenty-five cents per thousand feet. Said payments to be made as follows: Seventy-five cents per thousand feet to be paid by the said *L. S. Cohn* to *Alex. Stewart* as soon as five hundred thousand feet are sawed, and so continued until the whole of the above mentioned logs are sawed; and the remainder of the payment that may be due to be paid as soon as the lumber may be sold, or otherwise at any reasonable time after this lumber arrives in market on the Mississippi river. And it is further understood that the said *Alexander Stewart* agrees to pay all the boomage of those logs, and said boomage is included in the price made and agreed between the parties, two dollars and seventy-five cents per thousand feet for sawing and booming these logs. *L. S. Cohn* for his part agrees to drive these logs herein mentioned to the Wausau boom as soon as the water may permit, and agrees to pay the amount herein mentioned and at the time specified."

The defendant introduced evidence tending to show that he never assented to the terms of agreement stated in the writing above recited, but that the contract between the parties was as stated in the answer.

The evidence found in the bill of exceptions is extremely voluminous; but so much of it as bears upon the construction of the contract is sufficiently stated in the opinion.

The court charged, among other things, 1. That if defendant agreed absolutely to receive all of the logs in question into the Wausau boom as they should arrive at the boom, and saw them into lumber, then, if the logs were run down to the boom and there tendered to defendant for receipt into the boom, and he, without fault on plaintiff's part, refused or failed to receive them into the boom and to saw them, but caused or suffered them to run past the boom and down the river below, he was liable to plaintiff for all damages reasonably and necessarily resulting to the latter from such refusal or failure. 2. That in such case it would be no excuse for de-

fendant's nonperformance of his contract, that the boom was full, or that the boom company would not permit plaintiff's logs to be put into the boom; because these were contingencies which defendant should have provided against. To the first of these instructions no exception was taken; to the second, an exception was filed only after verdict, with a motion for a new trial. At plaintiff's request the court further instructed the jury, that if defendant undertook to receive the logs at the boom, and into it, and pay the boomage, the risk as to the capacity of the boom to hold the logs, or the ability or disposition of the boom company to take them in, was with the defendant. This instruction was excepted to at the time when it was given.

The court refused instructions asked by defendant to the effect that if the contract was as claimed by plaintiff, it was a contract of bailment for hire, and bound defendant to use ordinary care and diligence to carry it out, and he was liable only in case he failed to use such care and diligence about the boomage and saving of the logs; that defendant was not liable for the acts of the boom company, done without his consent or procurement; and that if the boom was full and it was impossible to take therein the plaintiff's logs, and for that reason the boom master turned them by, and the plaintiff or his agent was notified in time to take care of them, defendant was not liable. Exceptions were duly taken to the refusal of these instructions.

Verdict in plaintiff's favor for $4,500. A motion for a new trial, based upon "the minutes of the testimony, the papers and pleadings, the charge of the judge to the jury, and the exceptions taken thereunto and filed" with such motion, was made, upon the grounds, among others, that the verdict was contrary to the law and the evidence, and that the court had "erred in the charge to the jury in those portions excepted to by the defendant," and in refusing the instructions asked by defendant, and in giving that asked by the plaintiff. With

this motion defendant filed exceptions to the giving and refusal of instructions, which were the same as are noted above. The motion was denied; and defendant appealed from a judgment in accordance with the verdict.

*W. C. Silverthorn*, with *S. U. Pinney*, of counsel, for the appellant, contended, among other things, that there was evidence on plaintiff's part tending to show a contract more favorable to him than the paper writing put in evidence by him; and that, assuming this to have been the contract, it must be construed with reference to the state of facts existing at the time, and with reference to which it was made. They further argued at length from those facts, that defendant's agreement to " take charge of " the logs on their arrival at the Wausau boom, etc., was merely a contract of bailment, and bound him only to the exercise of prudence and care. Story on Bailm., §§ 37, 426a, 429, 431, 437; Edwards on Bailm., 38, 339; *Foster v. Pettibone*, 7 N. Y., 433; *Coggs v. Bernard*, 1 Smith's L. C. and notes. See also Smith's Com. Law, 90; Chitty on Con., 646–653; *Citizens' Bank v. Steamboat Co.*, 2 Story, 33; *Appleby v. Myers*, L. R., 2 C. P., 651; *Taylor v. Caldwell*, 3 Best & Smith, 826; *Howell v. Coupland*, 24 Weekly Rep., 470.

*George D. Waring*, for respondent, argued, among other things, that if the agreement was as the jury had found, it was not illegal, nor, under the circumstances, absurd; and if defendant had a right to enter into it, he should be held to its performance, unless prevented by the acts of the plaintiff, the law, or the act of God. 2 Parsons on Con., 672, 673; 1 id., 459, 556, 557; *Beebe v. Johnson*, 19 Wend., 500; *Blacksmith v. Fellows*, 3 Seld., 416; *Norton v. Woodruff*, 2 N. Y., 153; *Warfield v. Watkins*, 30 Barb., 395; *Giles v. Crosby*, 5 Bosw., 389; *Tompkins v. Dudley*, 25 N. Y., 272; *Baker v. Johnson*, 42 id., 126; *Harmony v. Bingham*, 2 Kern., 99; *New Haven & Northampton Co. v. Quintard*, 6 Abb., N. S., 128.

COLE, J. It is obvious that the most favorable view which can be taken of the plaintiff's case, is to assume that the contract was as claimed by him, and as found by the jury upon the evidence. In that view, the written memorandum which was offered in evidence on the trial, may be said to show the terms of the contract as finally agreed upon by the parties. The inquiry then is, What was the duty or obligation of the defendant under the contract? Did he undertake and agree to receive and store the plaintiff's logs in the Wausau boom, himself becoming responsible for the capacity of the boom to hold the logs when they should arrive, and for the ability or disposition of the boom company to take them into the boom? The plaintiff insists that under the contract the defendant assumed that responsibility. He had the undoubted right to bind himself to that extent by his contract; and if he has done so, the law will hold him to a strict performance of his undertaking.

By the contract, the defendant in effect agreed to take charge of all the plaintiff's logs of certain designated marks, as quick as they should arrive at the Wausau boom, and to saw and deliver the lumber at the tail end of McIndoe's mill, at a good place to raft, all for the payment of $2.75 per thousand feet; and to put all the lumber, or a portion thereof, in a pile at a good place to raft as soon as ordered, for the payment of $0.25 per thousand feet; and it was further understood that the defendant was to pay all the charges for boomage on the logs; the boomage charges being included in the $2.75 per thousand feet specified above; the plaintiff on his part agreeing to drive the logs mentioned to the Wausau boom as soon as the water would permit. These are the material clauses of the contract to be considered, and which determine the extent of the liability of the defendant in respect to the logs. As aiding in the construction of this contract, it is claimed by the defendant's counsel that the state of facts which existed when it was entered into, and which it is reasonable to sup-

pose were in the contemplation of the parties, must be borne in mind. And these facts, as abundantly shown by the testimony, are, that the parties were familiar with the Wisconsin river, with the running of logs down the same, and with the mode of transacting all lumbering business along the river. It appears that the plaintiff knew that the Wausau boom, where his logs were to be stored or kept until they were manufactured into lumber, belonged to an incorporated company. He testified that he had seen the charter, and had seen parties act in reference to it at the boom. He knew all about the situation of the boom; its limited capacity to hold logs; that large quantities of logs were driven down the river to the boom at certain seasons; and that it was under the exclusive and absolute control of the boom company. No person had a right to interfere with the boom, and it belonged to the company alone to say what logs or timber should be received or excluded from it. It is true, the charter imposed upon the company the duty of retaining in its boom logs and timber when the owner thereof had filed with the secretary a request to that effect, together with the marks on his logs, for a compensation to be fixed by the board of directors, not exceeding a given amount; but in the storage of logs the stockholders of the company had a preference over other persons, under the charter. (Secs. 11 and 15, ch. 45, P. & L. Laws of 1871.) The defendant was a stockholder and officer in the company, but he had no right to direct what logs should be received in the boom. The company was not obliged to receive or take charge of any more logs or lumber at any one time than the capacity of its boom would accommodate or admit of; and it could relieve itself from all liability for or on account of logs coming to or into its boom, by notifying the owner, or person having charge of log-drives, that its boom was full, and to stop driving until it was ready or able to receive logs again. Sec. 16. There was testimony which tended to show that the plaintiff's agent in charge of the logs was notified by the com-

pany that the boom was full, and that it was impossible to receive the plaintiff's logs, but that he refused to stop the drive. The court below ruled, in effect, that this constituted no excuse for the failure of the defendant to receive the logs into the boom as they arrived, and to keep them safely therein until manufactured into lumber. In the view of the circuit court, the contract, by its terms, imposed upon the defendant the duty to receive the logs as they should arrive at the Wausau boom; and he had assumed the risk as to the capacity of the boom to hold the logs, and of the ability of the company to take charge of and retain them. And the question is, Was this a correct construction of the contract, and of the engagement of the defendant? It seems to us that it is not. The plaintiff was well aware that the defendant had no boom at Wausau, and that he possessed no facilities, other than the company's boom afforded, for storing and keeping logs. He contracted with reference to this condition of things, and the existence of the notorious facts above stated, with which he was entirely familiar. This being the case, it seems to us an unreasonable inference from the language used, to say it bound the defendant to stop the logs as they were driven down the river, and to put them into the company's boom and hold them there, notwithstanding this was impossible. It is true, if the defendant assumed that responsibility or duty, he is bound to discharge it, or suffer the consequences of his failure, whatever might have been the condition of the boom, because he might have provided against the contingency in his contract. It appears to us, however, that the agreement neither contemplated nor required the defendant to get the logs into the boom, but that this duty devolved upon the plaintiff. The plaintiff, by the contract, was to drive the logs to the Wausau boom as soon as the water would permit; and the defendant agreed to take charge of them as quick as they arrived at the boom. The defendant's duty or charge in respect to the logs did not arise or commence until the logs

arrived at or came to the boom. But the duty of driving the logs to the boom, and the risk that the company would be able to receive or retain them, rested with the plaintiff. The contract was one of bailment, where the identical logs which the defendant was to take charge of and manufacture into lumber were to be returned in an altered form. *Foster v. Pettibone*, 7 N. Y., 433. There is a clause in the contract which required the defendant to pay "all the boomage;" that is, he was to pay whatever charges the company might make for retaining and storing the logs. But we do not think the parties intended, by this clause, so to enlarge the defendant's duty as to render him responsible for providing facilities and booms for receiving and holding the logs whenever the company should drive them. Such a construction would do violence to the natural meaning of the contract as collected from the entire instrument. If the intention was that the defendant should stop the logs as they came down the river, and provide booms in which they could be stored until sawed into lumber, quite different language would have been used. The learned circuit court expressly charged that it was no excuse for a nonperformance of the defendant's contract, that the boom was already full with the logs of other parties, or that the boom company would not permit the plaintiff's logs to be put into it; for these were contingencies which the defendant should have provided against in his agreement. According to this view, the defendant took all the risk of furnishing boom facilities for receiving and storing the logs whenever the plaintiff should drive them. This error must work a reversal of the judgment. It is unnecessary to notice the other questions discussed by counsel.

*By the Court.* — The judgment of the circuit court is reversed, and a new trial ordered.

The respondent asked for a rehearing, and briefs in support of the motion were filed by *Geo. D. Waring* and *L. S. Dixon*.

Cohn vs. Stewart.

They contended, 1. That it was erroneously assumed in the foregoing opinion that the circuit court had put a construction upon the contract, which construction was different from that put upon it by this court; whereas the record shows clearly that the circuit court left it entirely to the jury to determine from all the evidence what the contract was, and merely instructed them as to the legal consequences in case they should find that the contract was such as plaintiff, *in his complaint*, alleged it to be.   2. That the contract was in fact an *oral* one, and the written memorandum was admitted only to be considered by the jury in connection with other evidence in determining what the real agreement of the parties was; and, there being confessedly no written contract, the question what the agreement was, properly belonged to the jury.   3. That while defendant denied in the court below that the written memorandum put in evidence contained the true terms of the contract between the parties, and claimed that the terms of such contract as actually entered into were more favorable to himself; and while he also contended that if the jury should find that the contract was as claimed by the plaintiff (i. e., as claimed by plaintiff *in his complaint*), still he had shown a sufficient excuse for a partial *nonperformance* — he did not in any manner object to the submission by the court to the jury of the question whether the contract was in fact such as was claimed in the complaint, viz., a contract on his part to receive the logs *into* the boom, as well as to take charge of them, etc., after they should be admitted therein; that he took no exception to the instructions by which that question was submitted; that the instructions asked by himself assumed that the jury might find that the contract was as claimed by the plaintiff; and that he had thus lost all right to object in this court to such submission of the question to the jury.   To the point that the appellate court will not consider objections not properly presented to the consideration of the trial court, they cited *Vilas v. Downer*, 21 Vt., 423; *Wentworth v. Leonard*,

4 Cush., 417; *Bullock v. Hayward*, 10 Allen, 462; *Lachner v. Salomon*, 9 Wis., 129; *Hayward v. Ormsbee*, 11 id., 8; *Bogert v. Phelps*, 14 id., 88, 94; *Weisenberg v. Appleton*, 26 id., 56, and numerous other cases.  4. That the objection was not saved by the exception taken to the refusal of a new trial, that being made upon specific grounds, not including this objection; and it being the rule that where a party moves for a new trial upon a bill of exceptions, he must rely upon the grounds taken and points made by him on the trial. *Staring v. Brown*, 6 Barb., 109.  5. That even if the written memorandum had been the sole evidence of what the contract was, or had been duly executed as the act of the parties, the meaning of the words in controversy would have been a question of fact for the jury.  If the words of a written instrument are equivocal, yet susceptible of a definite application by resorting to the circumstances under which the instrument was made, the meaning of the instrument is a question for the jury. *Ganson v. Madigan*, 15 Wis., 144, 153, and cases there cited; *Prentiss v. Brewer*, 17 id., 635; *Rockwell v. Ins. Co.*, 21 id., 548; *C. & P. R. R. Co. v. Baxter*, 32 Vt., 805; *Darling v. Dodge*, 36 Me., 370; *Berry v. Billings*, 47 id., 329; *Copeland v. Hall*, 29 id., 94; *Law v. Cross*, 1 Black, 538; *Pollen v. LeRoy*, 30 N. Y., 563; *Martin v. Cope*, 28 id., 181.

In reply, the appellant's counsel argued, that upon the plaintiff's evidence that defendant accepted by letter a proposed written contract already signed by the plaintiff, this must be treated as a written contract between the parties, and its construction was for the court; that the extrinsic facts relied upon to sustain the construction given by this court were not disputed, and there was therefore no mixed question of law and fact for the jury to pass upon (1 Wend., 457; 21 id., 643; 11 Johns., 187; *Cowan v. Lindsay*, 30 Wis., 586); and that the question as to whether the court erred in leaving the construction of the contract to the jury, was fairly raised by the exceptions taken to the instructions given, and to the

refusal to give those asked by defendant. They further contended that where the verdict is not sustained by law and the evidence, it is the duty of the trial court to set it aside upon a motion properly made upon that ground. A new trial may be asked for on a *case* made, for misdirection of the judge, although no exception was taken to the charge at the time; and where no specific exception is taken on the trial, if, on a case made, it appears that the plaintiff ought not to have recovered, on grounds which, if they had been taken at the time, could not have been obviated, the verdict will be set aside. *Rich v. Penfield*, 1 Wend., 380; *People v. Holmes*, 5 Wend., 191; *Kowing v. Manly*, 2 Abb. Pr., N. S., 377; 9 Bosw., 224. The same is true when, under our practice, the judge permits a motion for a new trial to be made on the minutes of the court. Such motion may be made upon exceptions, *or for insufficient evidence*, or for excessive damages (Tay. Stats., 1498, § 21); and if it is denied, and an exception taken, and a bill of exceptions made containing all the evidence, this court must review the action of the trial court upon such motion. Tay. Stats., 1632, § 6. The motion for a new trial in this case was not based merely upon *exceptions taken at the trial*, and therefore *Staring v. Brown* is not in point. See *Algeo v. Duncan*, 39 N. Y., 313; *Prentiss v. Danaher*, 20 Wis., 311, 320; *Whalon v. Blackburn*, 14 id., 432.

COLE, J. On the motion for a rehearing, it is claimed that the whole issue as to what the contract was, was fairly submitted under proper instructions, and that the jury found that the defendant agreed to receive and put the logs in the Wausau boom when and as fast as they should arrive at that point. But it must be borne in mind that the plaintiff himself testified that "*the writing contains the agreement I made with defendant, and it is correct, just as we made it.*" It was therefore assumed in the opinion that the memorandum contained the terms of the contract which the parties made. It

certainly was not competent for the jury to find that the parties entered into a different contract, more favorable to the plaintiff than this; since such a finding would be unsupported by the evidence in the case. Thus, assuming that the memorandum contained the contract precisely as made, the court was called upon to construe it and determine the obligations it imposed upon the parties. It was as though there had been a special verdict, the jury finding that the written memorandum showed the contract just as made and agreed upon, and all of it. What would have been the duty of the court on such a special verdict? Manifestly to determine whether the defendant had agreed to furnish boom facilities and get the logs into the boom. In other words, the court had to place a construction upon the contract which the plaintiff testified was entered into, and see if it supported the action. If the written memorandum contained the agreement just as made, and was correct in all respects, it will not do to say the jury were authorized to find that defendant was bound to do something which that contract did not require him to do. Upon the face of the contract itself, as testified to by the plaintiff, we were clear that the defendant had not undertaken and agreed to get the logs into the boom. True, in the opinion certain extrinsic facts are alluded to, of a public, notorious character, as strengthening the view we took of the contract upon its face, and in support of the construction which we thought it must receive. But, aside from these extrinsic circumstances, we entertained no doubt as to the meaning of the contract. It seemed to us it would be a most forced and unnatural construction of the language used, to hold that it imposed upon the defendant the duty of getting the logs into the boom and to furnish boom facilities as the logs should arrive at the Wausau boom. We do not think there is anything equivocal or doubtful as to the meaning of the words of the written memorandum, or any necessity of resorting to extrinsic facts to interpret them. Without refining upon language, we think

the clause that the defendant agreed to take charge of the logs " as quick as they arrive at the Wausau boom," signifies that he was to take charge of them when they were put into the boom by the plaintiff.

But it is said there is no exception taken to the rulings of the court below, which properly raises the question as to the construction of the contract. Exceptions were taken to the refusal of the court to give certain instructions asked by the defendant, which were more favorable to the plaintiff than the facts warranted. We need not dwell upon them. There was an exception taken to the giving of the instruction asked on the part of the plaintiff, which was not based upon any evidence in the case, and was calculated to prejudice the defendant. Moreover, there was an exception taken to the refusal of the court to set aside the verdict and grant a new trial for various reasons. This motion was based upon the minutes of the testimony, and should have been granted. The exception taken to that ruling is sufficient to raise the question we have considered.

*By the Court.* — The motion for a rehearing is denied.