2p 379
101 264

## GETTY et. al. v. ROUNTREE.

1. PRACTICE—EXCEPTIONS.—Exceptions taken at the trial should be noted and appear as having been taken when the matter to which they relate transpired; the formality of reducing them to form for signature may be subsequently attended to. Exceptions not taken in this manner will not be noticed.

2. WARRANTY—IMPLIED—EXPRESS.—On the sale of goods, etc., which are present and in view of the parties, no warranty of quality will be

implied where none is expressly made, the rule of *caveat emptor* applying to such a case. But the sale of provisions to be used for food, or where there are fraudulent representations made by the vendor as to their quality, are exceptions to this rule; and so, too, where goods are sold by sample, in which case the law implies a warranty that the bulk will conform to the sample.

3. IMPLIED WARRANTY.—In executory contracts to furnish articles for a specific purpose by manufacturers, there was an implied warranty that the article delivered should answer the purpose for which it was designed, the purchaser having had no opportunity of testing it.

4. SAME.—Where a manufacturer undertook to deliver a pump designed to exhaust water from a mine, there is an implied warranty on his part that in form and structure it shall be suitable for the purpose for which it was so intended by the purchaser.

5. WARRANTY—REMEDY—RECOUPMENT.—In case of the breach of either an express or implied warranty, the purchaser may bring his action therefor against the vendor, or if sued by him for the price, he may set off his damages in diminution of the price or sum to be paid; and he is not bound, in order to do so, to return or offer to return the article purchased, or to notify the vendor of its defects. *Fisk v. Tank,* 12 Wis. 276.

6. WARRANTY—FRAUD.—Where there is *fraud* in the sale of a chattel, with or without warranty, it is competent for the vendee to return or offer to return the article purchased, and recover back the purchase money paid, with damages; but where there is a warranty, express or implied, but *no fraud,* he has no such right, but his remedy is confined to a suit for damages for breach of the warranty, or to recoupment of the damages out of the purchase price, in case he is sued for it.

*(2 Chand. 28.)*

ERROR to the Circuit Court for *Grant* County.

This was an action of assumpsit on a promissory note, executed by the defendants to the plaintiffs, who were manufacturers of pumps, for the price of a pump furnished by them to defendants, to be used for pumping water from a lead mine, under a contract with them; for the sum of $400.31, dated October 5, 1847, payable three months after date. The defendants pleaded non-assumpsit, and, under that plea, gave notice that they would prove on the trial that the note was given for the balance due on the purchase of a certain pump, bought of the plaintiffs by defendants and sent to defendants, and which pump was defective and in bad condition for use;

and they claimed to recoup out of said note the damages which they had sustained by reason of the defects in the pump.

On the trial of the cause the defendants proved, as against the plaintiffs' claim upon the note, that the *plunger* of the pump was badly arranged and not regularly turned, and that the flanges did not correspond, by which they suffered damages to about the amount of four hundred dollars. The defendants gave no notice of these defects in the pump to the plaintiffs, but, upon the receipt of the pump, put it up and used it in their "lead diggings," until it became unprofitable further to work them, and then sold the pump. There was no proof of any offer to return the pump to the plaintiffs, on the discovery of the defects. The jury found a verdict in favor of the plaintiffs for $66.43. A motion for a new trial was made by the plaintiffs, as based upon the alleged error in the charge of the court to the jury, and also for omission to charge the jury rightfully on the law of the case.

The motion for a new trial assigned the following causes:

1. The defendants did not prove any notice given to the plaintiffs of any defect in the pump, which formed the consideration of the note sued upon.

2. That the court omitted to charge the jury that such notice was necessary in order to enable the defendants to withhold any part of the sum due on the note.

3. That the court erred in the charge it did give, in this: the court charged as follows: "The note itself imports a consideration, and *prima facie* makes out the plaintiffs' case, and, in the absence of any defense, the plaintiffs, upon the production of the note in evidence to the jury, would be entitled to recover. In this case, however, a defense is set up. It is alleged that there is a failure of consideration, and this failure may be either total or partial. A total failure of consideration is, where the article furnished or delivered at a sound price is worthless or of no value, and wholly fails to answer the objects or purposes for which it was sold and for which it was·

held out or represented by the seller to be suitable. A partial failure of consideration is where the article furnished is of some value, but fails in part to answer the purposes or object for which it was sold and for which it was held out or represented by the seller to be suitable, as, for instance, by reason of the materials being defective or of the work being done in an unskillful or unworkmanlike manner. If, applying these principles of law to this case, the jury believe, from the testimony submitted to them, that there was a total failure, in that case the plaintiffs are not entitled to recover. If, however, the jury are not satisfied, from the evidence submitted to them, that there was a total failure of consideration, but that the consideration of the note sued on and offered in evidence in this cause has partially failed, then in that case such partial failure of consideration will have the effect of reducing, *pro tanto*, the plaintiffs' damages. When an article is ordered from a manufacturer for a specific purpose, and a sound price is paid for it, the law implies a warranty that such article is reasonably fit for the purposes for which it was sold. In case of breach of warranty or of contract in the sale of chattels, the vendee may retain them and bring his action on the warranty, or, if he be sued for the price, he may, to avoid circuity of action, show a breach of contract in reduction of damages; and this principle applied to the case on trial. That it was not necessary for the defendants to offer to return the pump in order to make their defense available; that a return or offer to return is only necessary where the vendee of the article disaffirms the contract, and seeks to recover back the consideration paid. In that case he must return or offer to return the thing purchased in a reasonable time. That if the jury should find the pump to have been imperfect and not in conformity with the contract, in that case the legal rule would be to deduct from the price the sum constituting the difference in value."

4. Because the court errred in the rejection of a part of a certain deposition relating to the expenses of wood for running

the engine, and other expenses, and because the court allowed certain expenses of defendants as set-off by way of reducing damages.

The motion was denied. The counsel for the plaintiffs then moved the court for judgment for the amount of the note in suit and the interest accrued thereon, notwithstanding the verdict of the jury. This motion was also overruled, and judgment was then rendered in favor of the plaintiffs for the verdict and costs, and·they prosecuted this writ of error to reverse the same.

*J. T. Mills*, for plaintiffs in error, claimed that the charge given to the jury was erroneous, in regard to there being an implied warranty in the sale of the pump, and urged that no presumption of warranty in law arose in such a case. Also in that part of the charge relating to the recoupment of damages, and to these points cited 2 Kent Com. 480; 1 Cow. Treat. 356, 358; 15 Peters' Ab. 372 *n.*; 2 id. 362, 363; 20 Wend. 61; 23 id. 350; 1 Camp. 193; 17 Wend. 263; 4 Esp. 95.

As to the want of notice to plaintiffs of the defects of the pumps, there was reference made to Graham on New Trials, 293; 1 Cow. Treat. 366; 2 Wend. 350.

As to the right of new trial, the counsel cited Graham on New Trials, 453, 489; 7 Bac. Ab. L.; *McLean v. Middleton*, 2 Strange, 1259.

*Ben. C. Eastman*, for defendants in error, insisted that when an article was ordered from a manufacturer for a specific purpose, and a sound price paid therefor, the law implies a warranty that the article is perfect, and fit for the purposes for which it was ordered. And to this point was cited 10 Law Lib. 174 (Ross on Vend.); Smith on Cont. 54; Law Lib. 54, 168; 2 Stark. Ev. 902; 15 Eng. Com. L. 531; 1 id. 327; 2 id. 316; 9 Wend. 27, 28; Chitty on Cont. 450.

That in case of fraud or breach of warranty, it is not necessary for the vendee to return, or offer to return, the defective

article in order to make a defense available in a suit brought to recover the price of the article, and that the vendee, in such a case, may set off the defects of the thing sold, as against the price of the article, upon the hypothesis that it was to have been sound, and as to this principle, was cited 7 East, 479; 14 Mass. 282, 285; 8 Wend. 109, 480, 483; 3 Hill, 171, 172; 13 Johns. 302; 22 Wend. 236; 7 Pick. 181; 23 id. 283; Story on Cont. 99, §§ 154, 551.

HUBBELL, J. The plaintiffs in error, who were manufacturers, residing at St. Louis, contracted in September, 1847, to deliver to the defendants in error, who were engaged in the business of mining, in Wisconsin, a pump, "used for pumping water from a lead mine." The pump was delivered at Galena, about the last of October following, and the defendants soon afterwards put it up, in connection with a steam engine by which it was to be propelled, in their "diggings." The present suit was brought upon a promissory note for about $400, balance of the purchase money.

To the declaration, a plea of general issue was interposed, with a notice of defects and insufficiencies in the pump, on which the defendants claimed to *recoup* or reduce the plaintiffs' damages, in the trial. There was no express warranty by the vendors, and the vendees neither returned, nor offered to return the article, nor gave any notice of its defects, previous to the suit. The jury found a verdict for the plaintiffs of sixty-six dollars and forty-three cents, and, afterwards, a motion for a new trial was made and overruled.

To this ruling, and to several matters in the instructions of the court to the jury, exceptions were taken by the plaintiffs. But the bill of exceptions does not show, either at what time they were taken, or what was their precise form or substance. It was urged, on the argument, that the points made, on the motion for a new trial, were to be regarded as the substance of the plaintiffs exceptions or grounds of error. This, how-

ever, is a very loose practice. Every exception intended to be relied on in error, should be taken and noted at the trial in conformity to the existing rules of court, and afterwards formally embodied in the bill of exceptions, signed by the judge. Hereafter this court will decline to consider any exception not so taken and brought before it.

The points of the plaintiffs in error, which it is material for the court to examine, arise upon portions of the judge's charge to the jury, to which it is understood that exception was taken. Those portions are as follows:

"Where an article is ordered from a manufacturer for a specific purpose, and a sound price is paid for it, the law implies that such article is reasonably fit for the purposes for which it was ordered.

"In case of breach of warranty, or breach of contract in the sale of chattels, the vendee may retain the article and bring his action upon the warranty, or, if he be sued for the stipulated price of the article, he may, to avoid circuity of action, show such breach of warranty or breach of contract, in evidence, in reduction of damages; and the same rule which would apply in an action for breach of warranty or breach of contract, would apply on giving such breach in evidence in the action upon the note for the price of the article sold.

"It is not necessary to the maintenance of an action for breach of warranty, in the sale of personal property, that the plaintiff should have returned, or offered to return, the property sold. A return or offer must be shown only where the plaintiff disaffirms the contract and seeks to recover back the money or other consideration paid.

"If, in this case, the jury should find from the evidence that there was a partial failure of consideration, by reason of the pump being imperfect or not completed in a workman-like manner, then the true criterion of a reduction of damages would be the difference between the value of a pump, com-

pleted and executed in a workman-like manner, and the actual value of such a pump as it was delivered to the defendants."

The verdict of the jury, under the pleadings and evidence, must be regarded as conclusive of the fact of defects existing in the pump, in other words of a partial failure in the consideration of the note.

The substance of the plaintiffs' objections may be resolved into two questions:

1. Was there an implied warranty of the article sold? and,

2. Ought the defendants, within a reasonable time after delivery, to have returned or offered to return the article, or to have given notice of its defects, in order to entitle them to their defense?

The law has been long well settled, both in this country and in England, that on a sale and transfer of goods or chattels which are present and in view of the parties, no warranty of quality will be implied where none is expressly made. 1 Johns. 96; 4 id. 421; 5 id. 395; 4 Cow. 440; 13 Mass. 139; 17 Wend. 267; 23 id. 350; 1 Denio, 378; Chit. Cont., 3d Am. ed. 449; 2 Black. Com. 451; 6 Taunt. 108; 1 Camp. 190; 4 Cro. Jac. 4. This is the general rule of the common law upon an executed sale of specific chattels, and rests upon the old adage of *caveat emptor.* But there are several exceptions. One is a sale of provisions to be used as food. 3 Black. Com. 165; 12 Johns. 468. Another is, where there are fraudulent representations or concealments by the vendor. 4 Mass. 504; 18 Pick. 95; 8 Met. 550; 4 Eng. C. L. 486; 4 Camp. 144.

Another exception is, where there is a sale of goods by sample, in which case, although the bulk of the goods may be present or within the reach of the parties, the modern authorities generally hold that there is an implied warranty that the article shall agree in substance with the sample. 2

East, 314; 4 Barn. & Ald. 387; 18 Wend. 425; 1 Denio, 386; 2 Nott & McCord, 530.

In *Sands v. Taylor*, 5 Johns. 395, SPENCER, C. J., says: "It has frequently been decided here that on the sale of a commodity no action can be sustained for any difference in quality between the thing contracted for and the thing delivered, unless there be fraud or a warranty. I am disposed to confine this rule to the case of a sale where the thing sold is exhibited, and am ready to admit that on sales by sample there is an implied warranty that the sample, taken in the usual way, is a fair specimen of the thing sold." In *Oneida Manufacturing Society v. Lawrence*, 4 Cow. 440, which was a sale of cotton by sample, the same doctrine was applied, "though the plaintiff's agent saw the bags in which the cotton was packed." And the learned court of South Carolina had previously decided the same principle in 2 Nott & McCord, 540.

I think this may be regarded settled law, both in England and America, although in these cases the British judges led the way in a departure from the old rule of the common law, in favor of what has been regarded by distinguished jurists as the more doubtful one of the civil law. *Moses v. Mead*, 1 Denio, 378; *Hart v. Wright*, 17 Wend. 276, and remarks of PAIGE, Senator, in *Waring v. Mason*, 18 Wend. 439. I do not understand, however, that there has been any attempt to disturb the settled doctrine of *caveat emptor*, nor to establish as law what has been termed the "moral beauty" of the Roman code, *caveat venditor*, but to mark distinctly certain cases which alike reason and policy require to be excepted from the rigidity of the one and the laxity of the other.

But executory contracts, and contracts to furnish articles for a specific purpose, especially by manufacturers, have generally been regarded as resting on a different basis. In such cases there is held to be an implied warranty that the article delivered shall answer the purpose for which it was designed,

inasmuch as the parties have no opportunity to inspect it, or to decide upon its fitness in the first instance.

*Jones v. Bright*, 5 Bing. 533, is the leading case in England on this subject, in which nearly all the judges gave their views at length, affirming *Gardner v. Gray*, 1 Camp. 144, and *Bluett v. Osborne*, 1 Stark. 384, before decided by Lord ELLENBOROUGH. *Jones v. Bright* was a contract for copper in sheets. Fisher, a mutual acquaintance of the parties, introduced them to each other, saying to the defendants, " Mr. Jones is in want of some copper for sheathing a vessel, and I have pleasure in recommending him to you, knowing you will sell him a good article." One of the defendants answered, " Your friend may depend on it, we will supply him well." The copper was afterwards selected by the plaintiff's agent, who saw " nothing amiss," and the invoice described the article as " copper for the ship Isabella." The plaintiff paid the market price for it, as for copper of the best quality. The ship proceeded on a voyage to Sierra Leone, and the copper, instead of lasting four or five years, the usual duration of copper employed in sheathing vessels, at the end of four or five months greatly corroded, and was unfit for further service. BEST, C. J., says: " I wish to put the case on a broad principle. If a man sells an article, he thereby warrants it to be merchantable, that it is fit for some purpose. This was established in *Laing v. Fidgeon.* If he sells it for a *particular purpose*, he thereby warrants it fit for that purpose ; and no case has been decided otherwise, although there are doubtless some *dicta* to the contrary." PARK, J., observes : " On the case itself I have no doubt, distinguishing, as I do, between the manufacturer of an article and the mere seller." Again : " It has been argued that in all cases there must have been a warranty or a *scienter* and fraud. Perhaps so ; but till the cause comes to proof, it cannot appear whether the warranty be express or implied ; and it will be enough to show that *there is an implied warranty from the nature of the*

*dealings between the parties.* In the case referred to, the point has been decided to the full extent that the plaintiff requires in this case. The principal object of attack has been the case of *Gray v. Cox*, where Lord TENDERDEN said ' that if a person sold a commodity for a particular purpose, he must be understood to warrant it reasonably fit and proper for such purpose. And this is not to be esteemed an *obiter dictum*, because the other judges differed from him. It is his judgment formally given, and goes to support the argument for the plaintiff in this cause.'

" In *Fisher v. Samuda*, the plaintiff had paid for the goods after an action had been brought against him for the price, in which *he did not, either in bar or reduction of damages*, object to the quality of the goods, so that he may be said to have acquiesced in the defect, and the case has no bearing on the present. In *Laing v. Fidgeon* the rule is laid down in the strongest terms, and no man had more knowledge of commercial law than Chief Justice GIBBS. In *Gardner v. Gray* Lord ELLENBOROUGH lays down the same rule, and says that the principle of *caveat emptor* does not apply where the buyer has no opportunity of inspection. It has been argued that the plaintiff had inspection here, but it was merely of the exterior of the commodity, and he had no means of knowing the intrinsic qualities. In *Okell v. Smith* it was laid down that the seller is bound to furnish a commodity that will answer the purpose for which it was sold ; and Lord ELLENBOROUGH said, in *Bluett v. Osborne*, that by selling an article, the vendor impliedly warrants it fit for the purpose for which it is sold, and that it is important for the interests of commerce that it should be so. I am therefore clearly of the opinion that the verdict for the plaintiff should stand."

I know of no English case which shakes the principle here established. In our own courts there has been a strong inclination to confine the rule to sales for a specific purpose, where there was an impossibility of inspecting the article.

In *Hart v. Wright*, the cases are all cited and commented upon by COWEN, J., with his usual ability and research, but the point settled in that case does not conflict with the doctrine that an article sold for a specific purpose must be reasonably fit for the use intended; and in *Howard v. Hoey*, 23 Wend. 350, the same learned judge reviews the cases relating to executory contracts, and not only approves of the English decisions, but concurs with NELSON, C. J., in *Gallagher v. Waring*, 9 Wend. 28, that "suitableness enters into every promise to deliver articles of manufacture."

I am clear, therefore, that in the present case, where the plaintiffs, who were manufacturers, undertook to deliver a pump designed for pumping water out of lead mines, there was an *implied warranty* that, in form and construction, it should be suitable for the purpose intended by the buyers; and the charge of the court on this point was correct.

With respect to the rights of the defendants in this action, it presents the ordinary case of a breach of warranty. The defendants were at liberty, either to bring a separate action to recover their damages for the breach or to avail themselves of it in the present action, and reduce the damages of the plaintiffs to the value of the chattel sold. On this point also the charge was correct. *Perley v. Balch*, 23 Pick. 283; *Borockins v. Bevan*, 3 Rawle, 23; *McAllister v. Reab*, 4 Wend. 483; *Howard v. Hoey*, 23; id. 350.

The fact that there was a promissory note raises no barrier to recoupment. *Batterman v. Pierce*, 3 Hill, 171, was a suit upon promissory note, and the defense was held good; and the whole doctrine of *recoupment* is there so ably discussed and so aptly illustrated by BRONSON, J., that I need merely refer to it for all the law on the subject. See, also, *Basten v. Butter*, 7 East, 490; *Germaine v. Burton*, 3 Stark. 32; *Poulton v. Lattimore*, 9 Barn. & C. 259. But the omission to set up such a defense would have been treated, in a subsequent action of the vendees on a breach of the warranty, as a waiver

of their claim for damages.    *Fisher v. Samuda*, 1 Camp. 190.

I proceed to the last point.

When there is fraud in a sale of chattels, either with or without warranty, it is competent for the vendee to return or offer to return the article sold and recover back his purchase money, because the sale is void in law.   This is necessary where he intends to rescind the contract and sue for or defeat the recovery of the whole purchase money.    But it is not necessary where he intends to bring suit for the damages merely, by reason of the breach of warranty, or to set up the breach by way of reducing the vendor's recovery.    Chitty on Cont. 5th Am. ed. 458, and cases there cited ;   3 Rawle, 23 ;   2 Stark. Ev. 640, 645 ;   1 Mason, 437 ;   4 Wend. 483 ;   2 Pick. 215 ; 12 Wheat. 183.

Where there is a warranty and no fraud, the vendee is not entitled, against the will of the vendor, to return the article and recover back the price paid.    *Cary v. Gruman*, 4 Hill, 625 ;   *Kase v. John*, 10 Watts, 109 ;   *Sheet v. Clay*, 2 Barn. & Al. 456.    His only remedy is, by a suit for damages, or by recoupment, in case of an action for the purchase money. Unless, therefore, in the present case, there was proof of fraud on the part of the vendors—of which none appears—the defendants could not compel them to take back the pump, and there was no occasion for making a useless tender of what the plaintiffs might accept or refuse.    Nor was there any necessity of a notice of defects ;   the notice annexed to the plea was alike sufficient in law and in reason.

The defendants had already paid half the price of a sound article, had spent much time and money in transporting it to their mine and setting it in operation, in connection with other fixtures, and it failed to work well by reason of its improper or imperfect construction.    To return it and resort to an action for the recovery of their money paid, would have been but adding to their losses.    Yet a notice of its defects to the plaintiffs would have been idle, except to bind them to take it

back, which the defendants could not permit, or give the defendants a better claim for returning it, which, as we have seen, the plaintiffs might refuse. But the law required no such notice. The remedy of the defendants consisted in reducing the plaintiffs' demand to the actual value of the article delivered. This was their legal right. *Cary v. Gruman,* 4 Hill, 625. And this has been done, not by rescinding the contract, nor by treating it as void for fraud, but by letting in an equitable defense, consistent with the retention of the property and the affirmance of the sale by the vendees.

I am satisfied with the instructions of the court and the verdict of the jury.

Judgment affirmed, with costs.