BARKOW vs. SANGER and another.

CHATTEL MORTGAGE: *(2) Not always void when for greater sum than that due. (3) Not avoided by mortgagor's sale of part of the chattels without mortgagee's consent. (7, 8) Fraudulent intent for the jury.*

SPECIAL VERDICT: *(4, 5) Whether evasive: When objection that it is not responsive, to be taken. (5, 6) Verdict construed.*

REVERSAL OF JUDGMENT: *(1) Where all the evidence not preserved. (9, 10) For instructions not excepted to when given.*

1. Where the bill of exceptions does not contain all the evidence, the judgment will not be reversed upon an objection first taken here, which might have been shown by such bill to be groundless, if it had been taken in the court below.

2. The mere fact that a chattel mortgage was given for a sum greater than was due the mortgagee at the date thereof, is not sufficient to render it void in law. *Butts v. Peacock*, 23 Wis., 260, and *Blakeslee v. Rossman*, 43 id., 123, distinguished.

3. A sale of mortgaged chattels by the mortgagor, without knowledge or consent of the mortgagee, will not invalidate the mortgage.

4. Where wood was seized on a judgment two days after the judgment debtor had given a mortgage thereof, the jury, in a suit by the mortgagee against the judgment creditor, were asked to find specially whether the debtor, after he gave the mortgage, continued to sell and deliver wood, in the usual course of his business, out of that mortgaged; and they answered that some of the mortgaged wood was sold, but probably without the mortgagor's knowledge. *Held*, that the answer was not evasive.

5. The jury were further asked, whether it was *understood* between the mortgagor and the mortgagee, when the mortgage was given, that the former might sell the mortgaged wood, and dispose of the proceeds in the usual course of his business; and they answered, "There was no *agreement* made." *Held*,

Barkow vs. Sanger and another.

(1) That if the answer was not responsive to the question, the objection should have been taken when the verdict was received.

(2) That an "understanding" between two parties to a contract as to what rights each shall have thereafter in the subject matter of the contract, is an "agreement."

(3) That as the court below, in its instructions on submitting the question, correctly used the words "understanding" and "agreement" interchangeably as synonymous, it cannot be assumed that the jury used the latter word evasively.

6. The court submitted to the jury the question whether the mortgage was given "*without consideration and*" for a certain fraudulent purpose as to creditors; and the jury answered, "It was not." *Held*, that, in view of the instructions given (for which see the opinion), this answer must be treated as merely negativing the fraudulent purpose.

7. The question of fraudulent intent in such a case is usually one of *fact*, for the jury; and it was properly submitted to the jury in this case.

[8. Whether, under the statute (R. S., sec. 2323), it is always necessary, in taking a special verdict in cases of this kind, to submit the question of fraudulent intent to the jury, even where the court may, upon the evidence, be justified in directing them what answer to find, *quære*.]

9. A motion for a new trial of an action, made at the term of trial, based in whole or in part upon alleged errors in specified instructions, brings up such instructions for review, upon appeal from a judgment rendered upon the verdict after a new trial had been denied.

10. But where exceptions are not taken *at the trial*, the judgment will not be reversed for instructions technically erroneous, unless it clearly appears from the whole record that appellant was prejudiced by them.

APPEAL from the County Court of *Milwaukee* County. The case is thus stated by Mr. Justice TAYLOR:

" This is an action to recover the value of certain personal property. The plaintiff claimed to own the same by virtue of a chattel mortgage given to him by one Gottlieb Stolper, to secure the payment of the sum of $800, dated November 18, 1878. The defendant Sanger was sheriff of Milwaukee county, and took said property by virtue of two executions issued upon two judgments against the said Gottlieb Stolper, and in favor of the other defendant, Louis Coorsen. These judgments were entered and docketed on the 20th of November, 1878, upon two notes and warrants of attorney executed by the said Stolper

and another to the defendant Coorsen — one on the 8th day of May, 1878, and the other on the 12th day of August, 1878. The executions were issued on said judgments on the said 20th day of November, 1878, and the sheriff levied upon said mortgaged property on the same day.

"The defendants allege in their answer that the mortgage was given without consideration, and was fraudulent and void as to the creditors of the said Stolper. No question is raised as to the sufficiency of the allegations in the answer to put in issue the validity of the mortgage as to the mortgagor's creditors. No exceptions were taken upon the trial either to the introduction or rejection of evidence, or to the charge of the judge. The jury rendered a special verdict; [the court denied defendants' motion to set aside the special verdict and grant a new trial, and rendered judgment in plaintiff's favor, from which the defendants appealed]; and the only questions argued upon this appeal are questions arising upon the special verdict, and upon the refusal to grant a new trial."

Those portions of the special verdict to which exceptions were taken, are recited in the opinion.

For the appellants, there was a brief by *Joshua Stark* and *N. Pereles & Sons*, and oral argument by *Mr. Stark*. They argued, 1. That the mortgage was void as against creditors because it was given for a greater sum than was actually due. The condition of the mortgage on file must disclose the real nature of the transaction so far as it can be disclosed, or it will not be valid against creditors. *Pettibone v. Griswold*, 4 Conn., 158; *North v. Belden*, 13 id., 376; *Hart v. Chalker*, 14 id., 79; *Youngs v. Wilson*, 24 Barb., 510. Approving the doctrine of these cases, this court has indicated its opinion that such a mortgage as the one in question is void. *Butts v. Peacock*, 23 Wis., 360; *Blakeslee v. Rossman*, 43 id., 123. 2. That the mortgage was void because the description of the property therein ("one hundred cords of hard maple wood, three lumber wagons and one buggy, all being the property and in the

possession of said Gottlieb Stolper "), was not sufficiently definite; the location not being indicated by naming the lot, ward, city, county or state, and there being no other description sufficient to identify it. Counsel also urged the objections to the special verdict, and to the instructions, which are considered in the opinion.

For the the respondent, there was a brief by *Cotzhausen, Sylvester & Scheiber,* and oral argument by *Mr. Cotzhausen.*

TAYLOR, J. The defendants based their motion for a new trial upon the following grounds:

*First,* because the answer of the jury to the seventh question in the special verdict is uncertain and evasive, and inconsistent with the other findings.

*Second,* because the answer to the ninth question is not responsive to the question, but is indefinite and evasive, and said question is not, in fact, answered.

*Third,* because the answer to the thirteenth question is inconsistent and in conflict with the answer to the twelfth question.

*Fourth,* because the answer to the sixteenth question is contrary to law.

*Fifth,* because the court erred in submitting the sixteenth question to the jury for their finding, the same being a question of law, instead of a question of fact.

*Sixth,* because the court erred in instructing the jury "that, as the mortgage was given for a good consideration, its validity as to other creditors could not be impeached, unless it was shown by the evidence that the mortgage was made to benefit the mortgagor."

*Seventh,* because the special verdict is otherwise inconsistent, indefinite, evasive and imperfect, and contrary to law.

Upon the argument in this court, the learned counsel for the appellants made a point not made in the court below, that the judgment upon the special verdict should have been in

favor of the defendants, instead of in favor of the plaintiff, because, upon the facts found by the special verdict, the mortgage was fraudulent and void in law as to creditors.

This argument was based wholly upon the fact that the special verdict finds that the actual indebtedness of Stolper to the plaintiff, at the time the mortgage was given, was only the sum of $743.13, being the amount of two notes held by him and the accrued interest thereon; whereas the mortgage was given on its face to secure the payment of $800, and interest thereon from the date thereof; and the learned counsel insists that because the mortgage on its face purports to have been given to secure a larger sum than was then owing by the mortgagor to the mortgagee, and does not disclose on its face that it was intended to cover any future advances to be made by the mortgagee, it is fraudulent and void in law as to the creditors of the mortgagor.

It is probably a sufficient answer to this argument, that no such position was taken in the court below on the motion to set aside the special verdict, and no motion was made for judgment in favor of the defendants upon the special verdict for that reason.

It was, we think, well argued on the part of the learned counsel for the respondent, that this argument ought not to prevail in this court, for the reason that if this position had been taken in the court below, either upon the motion for a new trial or for judgment in favor of the defendants, the respondent, in settling the bill of exceptions, would have insisted upon the insertion of the evidence bearing upon that question, and that such evidence might have shown that, notwithstanding the discrepancy between the amount mentioned in the mortgage and the amount then actually due to the mortgagee, the mortgage was given in good faith, upon the belief that it expressed the amount then actually due, or that it was agreed that the mortgagee should presently advance enough to make the indebtedness the sum of $800.

As the bill of exceptions does not pretend to contain all the evidence, we cannot say that there was not sufficient evidence given upon that point to satisfy the court and jury that no bad faith or fraud could be predicated upon the fact of the difference between the sum mentioned in the mortgage and the sum then actually due to the mortgagee.

The decisions in this court do not hold that a chattel mortgage which is given for a sum greater than is actually due the mortgagee is fraudulent and void in law. Neither of the cases cited by the learned counsel goes to that extent. *Butts v. Peacock*, 23 Wis., 360; *Blakeslee v. Rossman*, 43 Wis., 123. In the case first cited, the court, in discussing this point, say: " But even though it should be held that such a mortgage is not necessarily fraudulent, and that if the surrounding circumstances are such as fully to repel any idea of fraud, it may be sustained, yet when the surrounding circumstances are of directly the opposite character, the jury should be told that the mortgage is fraudulent."

This was said in a case where the mortgage on its face was for the security of $1,100. The proof showed that only $570 had been advanced thereon; that the mortgagee knew that the mortgagor was in embarrassed circumstances; and that the consideration of the mortgage was more than the value of the mortgaged property. It was claimed by the mortgagee that the mortgage was given to cover future advances; but the evidence showed that all the advances which had ever been made was the sum of $570. In the other case, the question as to any discrepancy between the consideration expressed in the mortgage and the amount of the actual indebtedness was not in the case, and was not decided or intended to be decided.

As said above, we cannot, therefore, in the absence of the evidence given upon the trial, say that the jury were not justified in finding that the mortgage was given in good faith, and not for the purpose of hindering or defrauding the creditors of the mortgagor, as the evidence of the surrounding cir-

cumstances might have been such as to repel any idea of fraud predicated upon that fact alone.

The seventh question submitted to the jury was as follows: " Did Stolper, after he gave the mortgage, continue to sell hard maple wood in the usual course of his business, and deliver the same out of the mortgaged wood?" *Answer.* "There was some of the mortgaged wood probably sold, but unbeknown to him."

We do not think, under the circumstances, this was an evasive answer to the question. It will be remembered that the mortgage was given on the 18th of November, and the defendants took the wood on the 20th of November; but one whole day had passed between the giving of the mortgage and the taking by the defendants. The evidence is not preserved in the bill of exceptions, and the answer must therefore be held to have been supported by it, and that the sales of the mortgaged wood which had been made had been made by his employees, without the knowledge of the mortgagor.

The answer amounts to this: that sales had been made in the usual course of business by the employees of the mortgagor, but not with his knowledge; that they had been permitted to sell without being expressly forbidden, and without his having actual knowledge that such sales were made. It might, perhaps, be urged that the question ought not to have been submitted to the jury unless it was accompanied by another, connecting the mortgagee with a knowledge that such sales were being made. The mere fact that the mortgagor sold the property in the usual course of his business, after the mortgage was given, would not affect the validity of the mortgage as to the mortgagee, unless he knew that such sales were being made, or had previously consented that they might be made.

The ninth question reads as follows: " Was it understood by and between the plaintiff and Stolper, at the time when Stolper gave him the chattel mortgage, that Stolper should con-

tinue to carry on his business of selling wood, at his wood-yard, and would sell and dispose of the said mortgaged wood and its proceeds, as part of his stock in trade, in the usual course of his business and trade as a wood-dealer?" *Answer.* "There was no agreement made." This answer, the learned counsel for the appellants insists, is not responsive to the question, is evasive and indefinite, and is in fact no answer.

If the last objection be well taken, that the answer is not responsive, and therefore no answer, we think it was the duty of the defendants' counsel to have called the attention of the court to the fact when the jury rendered their verdict, and have requested the court to have again submitted the question to them for an answer. If the defendants were dissatisfied with the answer, because it stated that there was " no agreement " instead of " no understanding," we also think the objection should have been taken at the time, and the attention of the court and jury called to the supposed difference between " agreement " and " understanding." An " understanding " between the parties which would have defeated this mortgage, under the evidence in the case, must have amounted to an express agreement, for the reason that the time was so short between the making of the mortgage and the taking by the defendants that there were no acts of the parties intermediate from which an implied agreement could be inferred. The learned circuit judge, in his charge to the jury, to which no exception was taken by the counsel for the defendants, used the words " understanding " and " agreement " as synonymous. Webster defines the word " understanding " as " anything mutually understood or agreed upon."

In the case of *Fisher v. Fisher*, 5 Wis., 472, Justice COLE, in speaking of the necessity of proving an express contract between father and child to pay such child wages whilst living with the father, in order to enable the child to recover pay for his work, uses this language: " But to have done this it would manifestly have been incumbent upon him to show

that the ordinary relation of child and parent did not subsist between him and the defendant, and that it was the *understanding* of the parties that he should have compensation for these services." Justice PAINE, in *Kaye v. Crawford*, 22 Wis., 320, a like case, in which it was held that an express contract must be shown to entitle the plaintiff to recover, says: "The testimony of the plaintiff does not show that the services for which his father gave him the team were rendered in pursuance of any agreement or understanding that they were to be paid for. On the contrary, the fair inference from his own statements is that they were rendered without any such understanding." Chief Justice RYAN, in *Tyler v. Burrington*, 39 Wis., 376–382, in speaking of how an express contract might be proved in an action for wages between parent and child, says: "If established by competent evidence, as entering into the *res gestæ*, such expectations of these parties might give color to circumstances tending to show that they ripened into a *mutual understanding* — an *express contract*." It seems to us that in view of the fact that the learned lexicographer above cited, as well as the justices of this court, have declared that the word " understanding," in the connection in which it was used in the question propounded to the jury, is synonymous with " agreement," we would hardly be justified in holding that the jury intended to evade this question by saying there was " no agreement," instead of saying there was " no understanding;" and especially as the learned judge, in his instructions to them at the time, had used the words as meaning the same thing, without criticism on the part of the learned counsel for the defendants.

We can see no force in the third objection taken to the verdict, and the counsel for the defendants made no argument to sustain it in this court.

The fourth and fifth objections relate to the sixteenth question submitted to the jury: " Was said mortgage given without consideration, and for the purpose of hindering, delay-

ing or defrauding the creditors of said Stolper?" *Answer:* "It was not." The defendant objected to submitting this question to the jury on the ground that it was double and ambiguous; that it called for a conclusion of law, and under the testimony it could only be answered in the negative as a whole, since there was no dispute that there was a consideration for the mortgage. We think the objection that the question was double was obviated by the instructions given to the jury upon its submission. The court said:

"This is the last question, and a question propounded by the plaintiff. There is no question, gentlemen of the jury, that this mortgage was given for a consideration. . . . The only question for you to determine, in answering this question, is, whether or not it was a fair, *bona fide* transaction between the plaintiff and Stolper, with a view of securing the indebtedness of Stolper to the plaintiff, or whether this mortgage was a cover entered into by the plaintiff with Stolper with a view of benefiting Stolper, and for the purpose of defrauding, hindering or delaying the creditors of Mr. Stolper."

"If you find, as you will find as a matter of course, that the consideration was a good one, and find that it was a fair transaction between Stolper and the plaintiff, and that it was done with a view of securing and obtaining payment of that debt by the plaintiff from Stolper, and no understanding or agreement was had between Stolper and the plaintiff, by which Stolper was to derive any benefit from this mortgage, or be allowed to sell or dispose of this wood with a view of defrauding his other creditors, then your answer to this question will be in the negative; otherwise you will have to answer it in the affirmative."

Under this charge, not objected to by the defendants, the jury were instructed to answer the question as a single question, and as though that part of it which relates to the consideration were not in it; and it is clear that upon such instructions the question was treated by the jury as though it had

been written: ."Was said mortgage given for the purpose of hindering, delaying or defrauding the creditors of said Stolper?"

And, as an answer to such question, the answer given by the jury is plain and direct, and is clearly not an answer to that part of it relating to the consideration, as the court and the learned counsel for the defendant agree that the undisputed evidence showed that it was given for a consideration.

The objection that the question called for a conclusion of law and not a fact, we do not think tenable. The intent with which a sale is made or a mortgage given, when such sale or mortgage is questioned by the creditors of the vendor or mortgagor, is in almost all cases a question of fact for the jury; and it only becomes a question of law when the facts proved are such that the law conclusively presumes an intent to defraud. The question of fraudulent intent, in cases of this kind, are declared to be questions of fact by the statute. Section 2323, R. S. 1878; *Hyde v. Chapman*, 33 Wis., 391. Under our statute, in cases of this kind, it might be necessary, in taking a special verdict, to submit the question of fraudulent intent to the jury as a fact to be found in the case, in order to sustain a verdict in favor of the party alleging such fraudulent intent, even though the court might, upon the evidence, be justified in directing the jury to find such fact; but, however that might be, we see no objection to the question in this case, and certainly its submission could not injure the defendants.

Although no exceptions were taken, either at the trial or afterwards, to the charge of the judge, yet, upon his motion for a new trial made at the same term, the learned counsel for the defendants alleged, as one ground for setting aside the verdict, that the court erred in instructing the jury as stated in his sixth reason for setting the same aside. This court has held that when a motion for a new trial is made at the same term at which the action is tried, and such motion is based in whole or in part upon the ground that the judge erred in his

instructions to the jury, such motion is equivalent to an exception to the instruction, and properly brings its correctness before this court for consideration, upon an appeal from a judgment rendered upon the verdict after such motion for a new trial is denied. *Nisbet v. Gill*, 38 Wis., 657; *Cohn v. Stewart*, 41 Wis., 527–541; *Wells v. Perkins*, 43 Wis., 160.

The exception is to a part of the charge of the circuit judge given upon his submitting to the jury the sixteenth question, and is stated in the motion to set aside the verdict, as follows: "That, as the mortgage was given for a good consideration, its validity as to other creditors could not be impeached unless it was shown by the evidence that the mortgage was made to benefit the mortgagor."

The objection is not to that part of it which relates to the good consideration, as it was admitted on the trial, and the judge charged, without any objection or exception, either at the trial or on a motion to set aside the verdict, that there was a good consideration therefor; but the objection and argument of counsel were to that part which says that the "evidence must show that the mortgage was made to benefit the mortgagor." It is possible that this remark of the learned circuit judge, if it stood alone as an independent instruction, would be subject to criticism, and not a fair statement of the law of the case. It may be true that it would be immaterial whether the arrangement was made for the benefit of the mortgagor or not, if it appeared that it was made for the purpose of hindering or delaying his creditors. The transaction might be such as not to benefit the mortgagor, and still fraudulent as to creditors; but ordinarily it would not be so, and the element of benefit to himself would enter into any arrangement to defraud his creditors.

These words, isolated, might be objectionable; but, taken in connection with the whole of the instruction given by the court to the jury upon the submission of the sixteenth question, as quoted above, we do not think they misled the jury

Barkow vs. Sanger and another.

upon the point raised by the question itself.   The only attack made upon the validity of the mortgage, which had any evidence tending to support it, was, that there was an understanding that the mortgagor might go on and sell the property mortgaged in his usual course of business; and, in the same sentence in which the objectionable words are found, the court plainly instructed the jury, in substance, that if they found from the evidence that there was an understanding or agreement that Stolper should be allowed to sell or dispose of the mortgaged wood with a view of defrauding his other creditors, then the mortgage was void.

The exception being of a technical character, and not having been made on the trial, so that, if virtually wrong, the judge might have corrected it on having his attention called to it, we are not disposed to give it the same effect as if taken at the trial.   When exceptions are not taken at the trial, this court will not reverse the judgment upon such exceptions, though technically erroneous, unless it clearly appears from the whole record that the party excepting was in fact prejudiced by the erroneous instructions.   *Neanow v. Uttech,* 46 Wis., 581; *Dufresne v. Weise,* id., 290.   In this case we do not think the defendants were prejudiced by the instruction, and the judgment should not be reversed for that reason.

After a careful examination of the whole record, we are of the opinion that the case was fairly tried upon the merits, and that the verdict of the jury is in all respects sufficient to justify the judgment in favor of the plaintiff.

*By the Court.* — The judgment of the county court is affirmed.