REULING and wife, Respondents, vs. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Appellant.*

*September 6—October 3, 1950.*

* Motion for rehearing denied, with $25 costs, on December 5, 1950.

For the appellant there was a brief by *Edward H. Borgelt, Richard S. Gibbs,* and *Norman C. Skogstad,* all of Milwaukee, and oral argument by *Mr. Gibbs* and *Mr. Skogstad.*

For the respondents there was a brief by *Arthur & Bardwell* of Madison, and oral argument by *Robert W. Arthur* and *Richard W. Bardwell.*

BROWN, J. Appellant's first assignment of error concerns the instruction of the trial court to the jury on the subject of Mrs. Reuling's contributory negligence. Respondents submit that appellant cannot take advantage of an error in the charge to the jury because it made no objection to the charge when it was given. Such was the common-law rule under which this court decided *Getty v. Rountree* (1850), 2 Pin. 379, but by sec. 2, ch. 194, Laws of 1874, the legislature permitted exceptions to any portion of the charge to be filed at any time before the close of the term at which the action was tried, with the same effect as if taken before the jury retired. With minor modifications of language this statute (sec. 2869) existed until 1925 when ch. 286, Laws of 1925, further liberalized that part of the statute, renumbered sec. 270.39, by declaring,—

Sec. 270.39, Stats. ". . . It shall not be necessary to except to errors in the charge to the jury or to the findings of fact

and conclusions of law made by the court or to the judge's refusal to charge the jury as requested, but the same shall be reviewed by the appellate court without exception; . . ."

The current sec. 270.39, Stats., has changed the language but not the sense of this provision.

An "objection" to a decision of a court or judge upon a matter of law is an "exception." 15 Words and Phrases (perm. ed.), pp. 461–464.

Under ch. 194, Laws of 1874, and sec. 2869, Stats., questions involving the review of instructions to the jury were before us on several occasions, notably: *Nisbet v. Gill* (1875), 38 Wis. 657; *Wells v. Perkins* (1877), 43 Wis. 160; *Dean v. Chicago & N. W. R. Co.* (1877), 43 Wis. 305, 310; and *Barkow v. Sanger* (1879), 47 Wis. 500, 3 N. W. 16, and in them we find nothing to indicate that an aggrieved party must make his grievance known *at the trial* in order to be entitled to a review of an instruction specified to be erroneous. The presence or absence of such an objection at the trial appears only in *Barkow v. Sanger, supra,* indicating that fact to be immaterial. In that case it affirmatively appears that objection was not made, but the party's right to review was not impaired. We conclude that the right of review of an erroneous instruction did not depend on objection (exception) to it at the trial under either the Laws of 1874 or under sec. 2869, Stats., nor does it under the still more lenient sec. 270.39.

Mrs. Reuling testified that, as the gates went up, she looked both to the east and the west, saw nothing coming and started to cross the tracks. Suddenly she heard her husband say, "My God, a train!" She did not see the train but swerved the automobile. She did not remember what followed. The court gave the following instruction:

"In connection with the third question which inquires as to the lookout kept by the driver of the Reuling automobile, you are instructed that it is the duty of every operator of an

automobile as he operates the same upon any highway to vigilantly exercise ordinary care with respect to the lookout kept by him, ahead of him, and, in that respect, to exercise such lookout at a point or points where his observation will be efficient for protection; and, if it is apparent that by approaching the path of a railroad train or any other method of proceeding he is liable to cause a collision or work an injury, it is his duty to take such other and safer method as he can with reasonable care and prudence under the circumstances then and there existing. . . ."

On the question inquiring whether Mrs. Reuling's negligence, if any, amounted to more than a slight want of ordinary care, the court charged:

". . . In connection with this question regarding slight want of ordinary care you are instructed that where there is a failure to look and listen within the zone where the duty exists, such failure, unless a sufficient excuse therefor is shown, constitutes more than a slight want of ordinary care."

There was no instruction regarding such zone or duty other than that quoted above.

Sec. 270.21, Stats., directs the trial judge to charge the jury and it is obvious that his duty has not been performed unless his charge is a correct statement of the law applicable to the issue. The issue upon which this instruction was given was whether or not Mrs. Reuling exercised the degree of care required of her before entering upon the railroad tracks. It has uniformly been held that a person has an absolute duty to look and listen before crossing a railway track, to give vigilant attention *in all directions from which a train may come,* and that he is not absolved from such duty by the existence of safety measures or devices maintained by the railroad at the crossing, though such measures and devices are conditions to be considered in determining whether the person exercised ordinary care under the circumstances and conditions then present. *White v. Minneapolis, St. P. & S. S. M. R. Co.* (1911), 147 Wis. 141, 133 N. W. 148; *Gundlach v. Chi-*

*cago & N. W. R. Co.* (1920), 172 Wis. 438, 179 N. W. 577, 985; *Rohde v. Chicago & N. W. R. Co.* (1893), 86 Wis. 309, 56 N. W. 872; *White v. Chicago & N. W. R. Co.* (1899), 102 Wis. 489, 78 N. W. 585.

The instruction first above quoted clearly states that the driver's duty is to look *ahead* of him and ". . . *in that respect* to exercise *such* lookout . . ." etc., for his own protection. So phrased, the instruction negatives any duty to look elsewhere than ahead, resulting in a misstatement of the law and a misleading of the jury as to what is required of a driver. Mrs. Reuling testified she did look both to right and left and respondents submit that thereby she performed her duty and any defect in the instruction describing her duty was harmless. We cannot agree with this because, though the train was close at hand and there was no testimony that Mrs. Reuling's vision was obstructed, she failed to see it. The jury must, therefore, determine whether her observation was sufficiently vigilant and attentive to meet the standard of due care and, having been informed by the court that her only duty was to look ahead, it was practically compelled to find that there was no negligence in her failure to see an object in a sector where she was not required to look at all. Whether the jury would have made the same finding if it had been properly instructed that ordinary care required Mrs. Reuling to look and listen in all directions from which a train might come, to ascertain that the track was clear before she entered upon it, cannot be foretold. Appellant is entitled to an answer by a jury informed, not misinformed, concerning the driver's obligation.

Appellant contends that because Mrs. Reuling failed to see the passenger train which was approaching in plain sight she was therefore guilty of contributory negligence as a matter of law. This leaves out of consideration some of the surrounding circumstances, an important one of which was the raising of the gate. Though it does not release her from the obliga-

tion to look and listen, the matter of the gate is a circumstance to be considered in determining whether her vigilance in approaching the crossing met the standard of such care as is ordinarily exercised by the great mass of mankind under like circumstances. In this respect we have much the same problem that was presented in *Gundlach v. Chicago & N. W. R. Co., supra.* The question cannot be resolved in appellant's favor as a matter of law but is properly one for the jury.

Appellant complains, further, that the court erred in its instruction concerning future pain and disability. The court charged:

". . . Before you may find any sum for future pain and inconvenience and loss of earning, you must be convinced by a fair preponderance of the evidence and to a reasonable certainty that such future pain and inconvenience and loss of capacity to enjoy life would be expected to continue or occur as a natural and probable consequence of the injuries they have sustained."

Considering the evidence given upon the trial, if this was the only assignment of error we would hesitate to direct a reversal of the judgment, though the charge would certainly state the law more accurately if it said "will continue" instead of "would be expected to continue."

It is necessary to consider appellant's contention that a new trial should be ordered in the interests of justice because of the partisan manner in which the learned judge conducted the trial. Sorry as we are to say so, the record discloses ground for criticism. The court's assistance in developing plaintiffs' case was continuous. It amounted to the court's taking over the examination of plaintiffs' witnesses, both the eyewitnesses of the accident and the medical experts, and performing the duties of plaintiffs' own counsel, and because of the court's use of leading questions and comments upon the testimony as it was elicited, such examinations were conducted in a manner which would have been objectionable if practiced by an

avowed advocate. Every instance cannot be set forth but a few must be given for illustration. Plaintiffs' witness, Donna J. Jones, had testified to witnessing the accident. Her reply to many questions concerning what she did and what she saw was "I don't know," "I'm not sure," "I didn't really notice," "I don't remember," "I can't say." When she was dismissed by counsel the court asked:

"*Q*. I take it as you came along there, you didn't expect there was going to be an accident. *A*. No.

"*Q*. If you had, you might have taken more particular notice of these things being asked now. *A*. Yes."

The next witness, Clara A. Budrow, testified: "Well, it's quite vivid in my mind. It was such an awful thing to see. . . ." And the court interposed: "Yes, it was certainly something that would not make a person calm. It would be the opposite, of course. . . ." A little later, in response to a question by the court, the witness said she did not know whether the south gates were up or down. Then:

"The Court: Well, I think you've answered the question, and I would rather think that if I were there and seeing a train and engine come together with a car, I would have my gaze riveted on that and probably not be watching the south gates right then. *A*. Well, it must have been, because I know I had my mind on the train.

"By the Court:

"*Q*. And then as the train went down the tracks, were you watching the south gates then? *A*. No, I won't say I was watching the gates.

"*Q*. No, I wouldn't think you would be either; you would be thinking about what happened before you. *A*. Yes."

When Mr. Reuling testified, he did not remember what had occurred after passing the gates.

"By the Court:

"*Q*. You mean, your injuries were such that your memory is gone from that point on, is that it? *A*. Yes, sir.

"*Q*. Well, that's quite a common experience by people who are knocked out. That is true in athletic contests that they

can't remember what quarter of the game that they were removed. You were rendered unconscious, were you? *A.* Yes, I was."

On another occasion one of the plaintiffs' witnesses, asked if he noticed smoke which obscured the vision at the crossing, said that he did not recall anything, but the court interposed, "Well, there was smoke in the air." We cannot approve the extent to which the court carried its examination of witnesses and its comment on and interpretation of their testimony and the fact that its assistance in these respects was given only to the plaintiffs made it most clear that the court's interest was on that side of the controversy. It is elementary that the conduct of the judge trying the case must be fair to both sides. Even the appearance of impartiality is destroyed when he takes his place alongside the attorney for one of them. The interests of justice demand that the trial should be fair and because we cannot consider it to have been so, we feel compelled to direct a new trial in both actions under the authority of sec. 251.09, Stats.

We do not pass on appellant's proposition that the award of $40,000 for Mr. Reuling's personal injuries is excessive and indicative of the passion and prejudice of the jury because there must be a new trial for other reasons and upon such trial the evidence given and the amount found may vary from that in the record before us.

Respondents have moved to review the trial court's order sustaining a demurrer to their second cause of action which sought treble damages, which they say are authorized by sec. 195.35, Stats., on the theory that the watchman's failure to operate the crossing gates properly was a violation of the order of the Wisconsin public service commission and the provisions of sec. 195.26 which require railroads to adopt and install reasonably adequate safety measures and devices. It appears that the gates and warning bell conformed to the order of the public service commission directing their installation. Sec. 195.35 provides:

*"Treble damages.* If any railroad shall do or cause to be done or permit to be done any matter, act, or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing required to be done by it, such railroad shall be liable to the person, firm, or corporation injured thereby in treble the amount of damages sustained in consequence of such violation; provided, that any recovery as in this section provided shall in no manner affect a recovery by the state of the penalty prescribed for such violation."

The meaning of these words when used in relation to railroads in sec. 195.35, Stats., must be the same as when they are used in sec. 196.64 respecting public utilities. In construing sec. 196.64, *Krom v. Antigo Gas Co.* (1913), 154 Wis. 528, 140 N. W. 41, 143 N. W. 163, we held that the section applied only to wilful breaches of duty. This interpretation was later withdrawn but still later reaffirmed and has been so applied in many cases thereafter. See *Chrome Plating Co. v. Wisconsin Electric Power Co.* (1942), 241 Wis. 554, 6 N. W. (2d) 692. The legislature has not disapproved this interpretation of its intent and we consider it is established law. Since the second cause of action made no charge that the watchman's manipulation of the gates was wilful or wanton, it follows that it did not state a cause of action under sec. 195.35 for treble damages and the demurrer to it was properly sustained.

*By the Court.*—Judgments reversed and causes remanded with directions for a new trial.

HUGHES, J. (*concurring*). Because of the improper comments by the trial court, which may have influenced the jury in arriving at its verdict, I agree with the result reached by the majority.

I am of the opinion, however, that with respect to the instruction on lookout, it being obviously erroneous, the defendant had the duty of objecting and pointing out the error so that the trial court could have had an opportunity to correct it before submitting the cases to the jury; and that

the defendant should not be permitted to sit back, either deliberately or by reason of inattention, while an erroneous instruction is given, and then be afforded a new trial on that account.

In the absence of statute the law is stated to be:

". . . objections or exceptions to instructions should be made at the conclusion of the charge, or at some appropriate moment before the case is finally given to the jury, so as to afford the court an opportunity to correct the alleged error." 53 Am. Jur., Trial, p. 607, sec. 827.

The statutes require counsel to request desired instructions. If counsel prefer to rely upon the court to give suitable instructions, then at least they should be required to listen and make timely objections to errors committed by the court. Obviously, if counsel request an instruction and the court refuses to give it or changes its form so that it is erroneous, counsel would be protected.

I do not believe that it was the intention of the legislature in eliminating the need for the taking of exceptions to the court's rulings and to the court's failure to instruct as requested, to change the law with respect to participation by the trial attorneys and to supervise the instructions given by the court to the end that the case may be properly tried in one proceeding. To hold otherwise would be to put a premium on laxity and award a new trial for errors which counsel might well avert by diligence.